**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

```
-------------------------------------------------------------x
```

COMCAST OF CONNECTICUT/
GEORGIA/MASSACHUSETTS/NEW
HAMPSHIRE/ NEW YORK/NORTH
CAROLINA/VIRGINIA/VERMONT, LLC,
D/B/A COMCAST,

                    Plaintiff,

          v.

THE VERMONT PUBLIC UTILITY
COMMISSION, and SARAH HOFMANN and
JAMES VOLZ, in their official capacities as
members of THE VERMONT PUBLIC
UTILITY COMMISSION,

                    Defendants.

```
-------------------------------------------------------------x
```

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 AUG 28  PM 3: 43

CLERK

BY_____
DEPUTY CLERK

Civil Action No. 5:17-CV-161

## PLAINTIFF'S COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Comcast of Connecticut/Georgia/Massachusetts/New Hampshire/New

York/North Carolina/Virginia/Vermont, LLC, d/b/a Comcast (hereinafter "Comcast"), by and

through its undersigned counsel, submits this Complaint for Declaratory Judgment and

Injunctive Relief against the Vermont Public Utility Commission ("VPUC") and Sarah Hofmann

and James Volz, each solely in their official capacities as members of the VPUC, and in support

of its Complaint states:

### PRELIMINARY STATEMENT

1.     This is a suit for declaratory and injunctive relief challenging recent actions and

orders of the VPUC denying Comcast's proposal for a renewed Certificate of Public Good

("CPG") to continue providing cable television services in Vermont ("Renewal Proposal").  The

Downs
Rachlin
Martin PLLC

Renewal Proposal was developed and augmented to meet the future cable needs and interests of Vermont cable subscribers based on the record evidence and Comcast's proven experience as a successful cable operator in the State.

2. Federal law establishes procedures and standards for franchising authorities, like the VPUC, to approve such franchise renewals. This federal framework expressly limits the demands and costs that a franchising authority can impose on a cable operator and its local subscribers as a condition of awarding a renewed franchise for continued cable services in a franchise territory. Vermont law establishes similar standards and limitations on the VPUC, consistent with the federal framework. In addition, cable operators, such as Comcast, are recognized providers of protected speech under the First Amendment and, as such, may not be singled out for undue burdens that infringe on such rights. And, like other citizens, cable operators are entitled to basic due process and other rights afforded under both the United States and Vermont Constitutions.

3. In this case, the VPUC exceeded its authority under federal and Vermont law by denying Comcast's Renewal Proposal and imposing instead a CPG with numerous conditions on Comcast's continued cable operations in the State that are arbitrary, unprecedented, and will ultimately harm local cable subscribers by resulting in millions of dollars in increased cable costs. The VPUC did so despite overwhelming record evidence that Vermont cable subscribers do *not want to incur any additional costs or fees for the kinds of conditions imposed by the VPUC*. In ordering these contested conditions, the VPUC also trampled on Comcast's First Amendment, due process, and other rights.

4. Among other things, the Renewal CPG would force Comcast to make approximately $4 million in immediate engineering changes to its cable systems in Vermont to

Downs
Rachlin
Martin PLLC

2

accommodate unreasonable demands from local public, educational, and governmental ("PEG") access channels; construct 550 miles of new cable lines in the State without regard to any specific consumer demand or unserved area and in disregard of well-established line extension policies and guidelines; provide a potentially unlimited number of costly "remote origination sites" to PEG access studios; and provision institutional networks ("I-Nets") to local governmental and educational entities upon request and on non-market based terms. A true and correct copy of the Renewal CPG is attached as Exhibit 1. Together, these contested conditions would impose tens of millions of dollars in additional regulatory costs and burdens on Comcast and its Vermont cable subscribers.

5.      Comcast brings this action for a declaration that the VPUC's actions and orders denying Comcast's Renewal Proposal and imposing a different CPG with the contested conditions were procedurally and substantively unlawful, will impede Comcast's ability to offer competitive cable services in the State to retain and attract subscribers, and will be harmful to Vermont consumers. Comcast further requests that this Court enjoin the VPUC from enforcing the unlawful conditions.

## PARTIES

6.      Comcast is a Delaware limited liability company authorized to do business in Vermont with its principal place of business located in South Burlington, Vermont. Comcast is a cable operator authorized to provide cable television service over cable systems in certain localities in the State of Vermont. Comcast is authorized to provide cable service to 197 cities, towns, and gores, and currently serves over 110,000 customers in Vermont.

7.      Defendant VPUC is a governmental agency organized and existing under the laws of the State of Vermont, and is the cable "franchising authority" in Vermont as that term is

Downs
Rachlin
Martin PLLC

3

defined in the Cable Act. 47 U.S.C. § 522(10). It was formerly known as the Vermont Public Service Board and was renamed the VPUC as of July 1, 2017. The VPUC has been delegated the authority under Vermont law to grant, deny, and renew CPGs for cable television operators in the State of Vermont. A CPG is a "franchise" as that term is defined in the Cable Act. *Id.* § 522(9). The VPUC was at all times relevant hereto acting for and on behalf of the State of Vermont.

8.     Defendants Sarah Hofmann and James Volz are each a current or former Commissioner of the VPUC. The Commissioners are sued solely in their official capacity, as they continue to act on behalf of the VPUC, as a state agency, in this matter, pursuant to the *Ex parte Young* doctrine established by the United States Supreme Court, 209 U.S. 123 (1908) and this Court's ruling in *Mountain Cable Co. v. Public Service Board*, 242 F. Supp. 2d 400 (D. Vt. 2003).[1]

## JURISDICTION

9.     This action arises under the Constitution and the laws of the United States, including 42 U.S.C. § 1983.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201, and Sections 626 and 635 of the Cable Act, 47 U.S.C. §§ 546(e)(1) and 555(a)(1). This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), with respect to Comcast's claims under the Vermont Constitution and Vermont state laws because they are interrelated to the claims within the Court's original jurisdiction.

---

[1] VPU Commissioner Margaret Cheney recused herself from this matter. VPU Commissioner Anthony Roisman was recently appointed and did not participate in the relevant orders.

## VENUE

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because all of the Defendants reside in this judicial district.  Venue is also proper in this Court pursuant to 47 U.S.C. §§ 546(e)(1) and 555(a)(1) because the Comcast cable systems at issue are located in this judicial district.

## GENERAL ALLEGATIONS

12.     Comcast incorporates by reference as if fully set forth herein the allegations of Paragraphs 1-11 of this Complaint.

## BACKGROUND

13.     Comcast is a cable operator serving consumers and businesses in Vermont. Comcast competes with a growing number of video service providers in the State, including the nation's two direct broadcast satellite distributors, DirecTV and DISH; telco providers, such as FairPoint/Consolidated; and other cable operators, such as Burlington Telecom and VTel. Consumers also have access to an increasing number of online or "over-the-top" video providers, such as DISH's Sling TV service.

14.     Comcast has operated cable television systems in the State of Vermont pursuant to two CPGs awarded by the VPUC.  One of the CPGs had an expiration date of December 29, 2016, and the VPUC and Comcast agreed to consolidate its renewal with renewal of the other CPG.  On January 13, 2017, the VPUC denied Comcast's consolidated Renewal Proposal. Instead of granting Comcast's Renewal Proposal, the VPUC imposed the Renewal CPG with the contested conditions.  Renewal Order, Docket No. 8301 (Jan. 13, 2017) ("Renewal Order").  A true and correct copy of the Renewal Order is attached as Exhibit 2.  These contested conditions

would add millions of dollars in costs and fees to Comcast's cable operations, making it harder for Comcast to retain and compete for subscribers and harming Vermont consumers.

## Renewal Proceedings Under The Cable Act

15.     Cable franchises, and the expectancy interest in the renewal of such franchises, are valuable property interests. In 1984, Congress enacted the franchise renewal provisions of the Communications Act of 1934, as amended ("Cable Act") to "establish an orderly process for franchise renewal which protects cable operators against unfair denials of renewal where the operator's past performance and proposal for future performance meet the standards established by [the Cable Act]." 47 U.S.C. § 521(5). The process and standards established by Congress are mandatory upon the timely request of a cable operator or invocation by a franchising authority, and provide a comprehensive framework to ensure that a cable operator receives due process in connection with the renewal of its franchise. *Id.* § 546(a)-(g).

16.     If a franchising authority denies, in whole or in part, the cable operator's renewal proposal after the completion of the procedures set forth in Sections 546(a)-(g), the cable operator has a statutory right of appeal to a federal district court. 47 U.S.C. § 546(e)(1). In enacting Section 546, Congress made clear that a denial includes instances where a franchising authority grants renewal, but subject to specified conditions which the cable operator refuses to accept. H.R. Rep. No. 98-934, at 75 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 4655, 4712.

17.     Between thirty and thirty-six months prior to the expiration of a franchise, the franchising authority may, on its own initiative or at the request of a cable operator, commence a proceeding to identify future cable-related community needs and interests and to review the cable operator's past performance. 47 U.S.C. § 546(a).

Downs
Rachlin
Martin PLLC

6

18. At the conclusion of this identification and review stage, the cable operator may submit a proposal for franchise renewal. 47 U.S.C. § 546(b).

19. Within four months of the cable operator's submission, the franchising authority must either accept the proposal and renew the franchise or issue a "preliminary assessment" that the franchise should not be renewed. If the franchising authority issues such an assessment, the franchising authority, on its own initiative or at the request of a cable operator, shall commence an administrative proceeding to consider whether the denial was justified. 47 U.S.C. § 546(c).

20. As part of that administrative proceeding, the franchising authority is limited to considering whether:

    a. "the cable operator has substantially complied with the material terms of the existing franchise and with applicable law," 47 U.S.C. § 546(c)(1)(A);

    b. "the quality of the operator's service, including signal quality, response to consumer complaints, and billing practices, but without regard to the mix or quality of cable services or other services provided over the system, has been reasonable in light of community needs," *id.* § 546(c)(1)(B);

    c. "the operator has the financial, legal, and technical ability to provide the services, facilities, and equipment as set forth in the operator's proposal," *id.* § 546(c)(1)(C); and

    d. "the operator's proposal is reasonable to meet the future cable-related community needs and interests, taking into account the cost of meeting such needs and interests," *id.* § 546(c)(1)(D).

21. Upon the completion of the administrative proceeding, the franchising authority is obligated to issue a written decision granting or denying the cable operator's proposal for

Downs
Rachlin
Martin PLLC

7

renewal based upon the record of such proceeding, and that decision must state the reasons for such denial. 47 U.S.C. § 546(c)(3).

22.     The Cable Act thus limits the grounds on which a franchising authority may deny a cable operator's renewal proposal. Denial is only proper if the franchising authority makes an adverse finding with respect to the factors identified in 47 U.S.C. § 546(c)(1) based on a preponderance of the evidence. 47 U.S.C. § 546(d).

23.     Further, a franchising authority may not base its denial of a cable operator's proposal on an adverse finding made with respect to the factors set forth in 47 U.S.C. § 546(c)(1)(A) (compliance with prior CPG) or (B) (quality of service) unless the franchising authority has provided the cable operator with prior notice and an opportunity to cure. 47 U.S.C. § 546(d).

24.     A decision of the franchising authority on a proposal for renewal is considered final when all administrative review by the State has occurred or the opportunity therefor has lapsed. 47 U.S.C. § 546(f).

25.     Section 546(e)(2) authorizes a federal district court to grant appropriate relief if it determines that a franchising authority (a) has materially failed to comply with the procedural requirements of Section 546 or (b) its denial of a franchise renewal proposal is not based on the statutory factors in 546(c)(1) and supported by preponderance of the evidence. 47 U.S.C. § 546(e)(2).

26.     A cable operator adversely affected by any final determination made by a franchising authority under Section 546 may bring an action seeking appropriate relief in federal district court pursuant to Section 555. 47 U.S.C. § 555.

Downs
Rachlin
Martin PLLC

8

**Other Relevant Cable Act Provisions**

27.     The Cable Act establishes uniform federal limits on cable franchise fees, which "shall not exceed 5 percent of [a] cable operator's gross revenues derived in [any 12-month] period from the operation of the cable system to provide cable services." 47 U.S.C. § 542(b).

28.     The Cable Act defines "franchise fee" broadly as "any tax, fee, or assessment of any kind imposed by a franchising authority or other governmental entity on a cable operator or cable subscriber, or both, solely because of their status as such," with only certain limited exceptions.  47 U.S.C. § 542(g).

29.     The term "franchise fee" does not include "capital costs which are required by the franchise to be incurred by the cable operator for public, educational, or governmental access facilities." 47 U.S.C. § 542(g)(2)(C).

30.     The Federal Communications Commission ("FCC") has interpreted Section 542 to provide that "payments made to support the operation of PEG access facilities are considered franchise fees and are subject to the 5 percent cap, unless they are capital costs, which are excluded from franchise fees under Section [542](g)(2)(C)." *Implementation of Section 621(a)(1) of the Cable Communications Policy Act of 1984, as amended by the Cable Television Consumer Protection and Competition Act of 1992*, Second Report and Order, 22 FCC Rcd. 19633 ¶ 11 (2007) ("*Second Report*"), *partially vacated on unrelated grounds*, *Montgomery Cty., Md. v. FCC*, 863 F.3d 485 (6th Cir. 2017).  PEG operating costs "support . . . the use of PEG access facilities" and "may include, but are not limited to, salaries and training." *Implementation of Section 621(a)(1) of the Cable Communications Policy Act of 1984, as amended by the Cable Television Consumer Protection and Competition Act of 1992*, Report and Order and Further Notice of Proposed Rulemaking, 22 FCC Rcd. 5101 ¶ 109 (2007) ("*First Report*").

Downs
Rachlin
Martin PLLC

9

31.     PEG capital costs "refer to those costs incurred in or associated with the construction of PEG access facilities." *First Report* ¶ 109.  Under Section 542(c), a cable operator "may identify . . . as a separate line item on each regular bill of each subscriber . . . (1) The amount of the total bill assessed as a franchise fee and the identity of the franchising authority to which the fee is paid [and] (2) The amount of the total bill assessed to satisfy any requirements imposed on the cable operator by the franchise agreement to support public, educational, or governmental channels or the use of such channels."

32.     Accordingly, while PEG operating costs are franchise fees subject to the 5 percent federal cap, a cable operator may also itemize as a separate charge on its subscribers' bills any capital or related costs imposed by a franchising authority to support PEG access channels.

33.     Further, Comcast's cable systems in Vermont are rate deregulated pursuant to Section 623 of the Cable Act.  47 U.S.C. § 543.  Like other deregulated cable operators, therefore, Comcast is fully permitted to pass through its costs as part of subscriber cable rates.

34.     The Cable Act provides, in pertinent part, that "any provision of law of any State, political subdivision, or agency thereof, or franchising authority, or any provision of any franchise granted by such authority, which is inconsistent with this chapter shall be deemed to be preempted and superseded."  47 U.S.C. § 556(c).

## **Vermont State Law**

35.     Vermont law also establishes standards for cable franchise renewals, similar to the federal framework set forth by Congress in the Cable Act.  30 V.S.A. § 1 *et seq*.; 30 V.S.A. § 501 *et seq*.  Under Vermont law, the VPUC is required to ensure that a cable operator's proposal will provide "a reasonable quality of service for basic, premium, or otherwise, having regard to available technology, subscriber interest, and cost." *See* 30 V.S.A. § 504(c)(1); 18-1

Vt. Code R. § 29:8.230. These criteria apply to CPG renewal proceedings, 30 V.S.A. § 506, to the extent such criteria do not conflict with the Cable Act, 47 U.S.C. § 556(c).

36.     Further, Vermont law establishes statutory guidelines governing the extension of cable television lines. It permits the VPUC to require line extensions in only two circumstances: (i) "when a company receives a bona fide request for service from a reasonable number of verified customers" or (ii) "with reasonable contributions in aid of construction from customers." 30 V.S.A. § 517(e).

37.     Rules promulgated by the VPUC implement the guidelines established in Section 517. Specifically, Rule 8.313 requires that each cable company file a statement of the company's policy on expansions of cable television lines into unserved areas as a tariff for the VPUC's approval, and establishes minimum requirements that each policy must satisfy. 18-1 Vt. Code R. § 29:8.313 ("Rule 8.313"). Rule 8.313 also sets forth formulas and guidelines designed to maximize access to cable service by obliging cable operators to construct line extensions to uncabled areas where it makes economic sense to do so. The rules regulate extensions both where (a) dwelling densities and consumer requests justify the costs of construction and (b) extensions will require contributions in aid of construction from customers. *Id.*

38.     Vermont law also authorizes the VPUC to penalize a cable operator for noncompliance with a CPG. If a cable operator is alleged to have "violated any material provision of its [CPG]," the VPUC is obligated to provide notice and "a reasonable opportunity to cure the violation." *See* 30 V.S.A. § 509(b). If the cable operator fails to cure the violation, the VPUC may sanction the cable operator by "impos[ing] a civil penalty in an amount not to exceed $1,000.00 per day nor a total of $20,000.00 for each violation," or by revoking the CPG. *Id.*

Downs
Rachlin
Martin PLLC

11

## FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY

39.     Comcast has provided cable television services in Vermont pursuant to a CPG issued on December 29, 2005 by the VPUC in Docket 7077. Order, Docket No. 7077 (Dec. 29, 2005). The VPUC issued the CPG in conjunction with Comcast's acquisition of cable systems formerly operated by Adelphia Communications Corporation ("Adelphia") and its Vermont affiliates ("Docket 7077 CPG"). A true and correct copy of the Docket 7077 CPG (as amended) is attached as Exhibit 3. The CPG included conditions previously established for the various Adelphia affiliates.

40.     Comcast completed its acquisition of the Adelphia cable systems on July 31, 2006. The CPG was amended on September 27, 2006 to reflect the names of the newly certificated Comcast cable entities. The CPG was amended again on October 16, 2008 to authorize Comcast to extend cable television service to additional areas of Vermont. The CPG had an expiration date of December 29, 2016.

41.     Comcast is also authorized to provide cable television service pursuant to a second CPG issued in Docket 7379 on March 21, 2008. CPG, Docket No. 7379 (Mar. 21, 2008). That CPG was issued in conjunction with Comcast's acquisition of additional cable systems in Vermont from North Country Cablevision, Inc. ("Docket 7379 CPG"). This second CPG had an expiration date of March 21, 2019.

42.     Each of the CPGs held by Comcast constituted a cable "franchise" as that term is defined in Section 602(9) of the Cable Act. 47 U.S.C. § 522(9).

43.     On June 5, 2014, Comcast filed a request that the VPUC commence a proceeding under the Cable Act, 47 U.S.C. § 546(a), to begin renewal procedures for the Docket 7077 CPG

Downs
Rachlin
Martin PLLC

12

by identifying future cable-related community needs and reviewing Comcast's performance under the CPGs.

44.     On July 30, 2014, the VPUC issued an order commencing a renewal proceeding under Public Service Board Docket No. 8301 (the "Renewal Proceeding").

45.     On July 8, 2015, the VPUC issued a procedural schedule for the Renewal Proceeding that adopted the recommendation of the Vermont Department of Public Service ("Department"), which serves as public advocate for Vermont cable subscribers. As part of this process, the Department is responsible for conducting an assessment of future cable-related community needs and interests (or "ascertainment"). 18-1 Vt. Code R. § 29:8.231. The VPUC also reviewed Comcast's performance under the then-existing CPGs, with input from the Department.

46.     The ascertainment conducted by the Department and its contractor in this case was delayed.     As a consequence, the Renewal Proceeding ultimately combined (a) the ascertainment and performance review with (b) the VPUC's review of Comcast's Renewal Proposal.  In other words, Comcast was essentially required to submit its Renewal Proposal without prior notice of the results of the ascertainment or performance review.

47.     The Department (as the public advocate) and the Vermont Access Network ("VAN") participated in the Renewal Proceeding as parties.  VAN is a membership organization consisting of 26 access management organizations ("AMOs").  VAN and its constituent AMOs advocate for local PEG access channels.

48.     On September 23, 2015, Comcast filed its Renewal Proposal, as required by the VPUC's order, along with supporting materials and a petition to include the Docket 7379 CPG in the renewal proceeding.

Downs
Rachlin
Martin PLLC

13

49.     On January 26, 2016, the Department filed written testimony and exhibits, including the ascertainment conducted by the Department, entitled a Community Needs Assessment ("CNA Report"). VAN also submitted written testimony and exhibits.

50.     The renewal process continued over the ensuing months: rebuttal filings were made by each party; the VPUC and docket parties visited a Comcast call center and product lab in South Burlington as a site visit; and a technical hearing in Montpelier was held. Also, as required by 30 V.S.A. § 506 for renewal proceedings, the VPUC held public hearings in each county served by Comcast under its CPGs.

51.     On March 22, 2016, Comcast filed a revised Renewal Proposal in response to requests and suggestions from the Department and VAN.

52.     On September 2, 2016, based on the record in the Renewal Proceeding, including the CNA Report, Comcast filed a further amended Renewal Proposal and briefing in support of its approval. The Department and VAN also submitted additional briefing.

53.     Reply briefing was submitted by the participants on October 6 and 7, 2016.

54.     On January 13, 2017, the VPUC issued its Renewal Order effectively denying Comcast's Renewal Proposal and adopting instead the Renewal CPG imposing the contested conditions.

55.     On February 13, 2017, Comcast filed a Motion to Alter or Amend Judgment requesting that the VPUC rescind or modify certain contested conditions on the grounds that they were unsupported by the record in the Renewal Proceeding and procedurally and substantively unlawful.

56.     On July 27, 2017, the VPUC issued an Order ("Final Order") denying Comcast's motion and affirming the Renewal Order, including on additional grounds not found in the Renewal Order. A true and correct copy of the Final Order is attached as Exhibit 4.

## THE VPUC'S ACTIONS AND ORDERS FROM WHICH COMCAST SEEKS RELIEF

57.     The VPUC's actions and orders effectively deny Comcast's Renewal Proposal and unilaterally impose alternative conditions in the Renewal CPG that will add millions of dollars in additional costs and fees on Comcast's cable operations that Vermont cable subscribers have made clear they do not want to pay. It will also impede Comcast's ability to compete for cable subscribers in the State and likely result in the loss of existing subscribers.

58.     The VPUC's denial of Comcast's Renewal Proposal and adoption of the Renewal CPG contravene the statutory procedures and grounds for denial of a cable franchise under federal and Vermont law. The VPUC's actions and orders are also contradicted or otherwise unsupported by the record evidence.

59.     The VPUC's actions and orders violate the Cable Act and Vermont law, have unlawfully infringed rights and protections secured to Comcast under the United States and Vermont Constitutions, and will harm Vermont cable subscribers.

## Interactive Program Guide – New Condition 22(3)

60.     In its Renewal CPG, the VPUC imposed a condition that would require Comcast to reengineer its cable systems in Vermont within one year to include program-specific listing information on Comcast's interactive program guide ("IPG") for every PEG access channel that it carries in the State. This condition would involve millions of dollars of immediate costs despite clear evidence that Vermont cable subscribers do not want to pay for such information. Recognizing this fundamental problem, the VPUC ordered that Comcast should bear these costs

Downs
Rachlin
Martin PLLC

15

"at its expense" due to alleged noncompliance with its prior CPGs. But that claim is not true. Nor did the VPUC give Comcast prior notice of such alleged noncompliance, much less any opportunity to be heard, before imposing this multi-million dollar penalty. The VPUC's actions were arbitrary, violate federal and state law, and denied Comcast basic due process.

61.     Comcast currently carries 45 PEG access channels, such as Channels 15 (VCAM), 16 (RETN), and 17 (Channel 17/Town Meeting Television) in Burlington, on its Vermont systems. These PEG access channels are highly localized. Their content includes local governmental meetings and community resident or organization produced content. Most Comcast cable systems in Vermont serve multiple individual communities that may have one or more PEG access channels. These PEG access channels are often carried on the same channel (e.g., Channel 8) on a cable system. Vermont cable subscribers in a particular town who tune to Channel 8 will only see the PEG access channel that serves their community. Cable subscribers in the next town who tune to Channel 8 will only see the PEG access channel that serves their town, and so on.

62.     Comcast's prior CPG required Comcast to "allow *PEG access groups* to access Comcast's [EPG] and *pay the fee so that the groups* can have their schedules listed on that channel." Docket 7077 CPG, Condition 23(3) (emphasis added). The EPG is a cable channel that provides a scrolling program list. It formerly appeared as the "TV Guide Channel," which was owned and managed by a third party. Pursuant to the EPG Condition, Comcast paid for groups of PEG access channels that shared the same channel on a Comcast system—such as PEG channels that share Channel 8 on that system—to be listed on the TV Guide. Nothing in the EPG Condition obligated Comcast to provide program-specific listing information for each

and every PEG access channel where groups of PEG access channels shared the same channel in a system.

63.     Comcast has complied and continues to comply with the EPG Condition.  In its Renewal Proposal, Comcast proposed to eliminate the EPG Condition based on historical lack of usage of the EPG by the AMOs that manage different PEG access groups.

64.     Comcast also offers an Interactive Programming Guide ("IPG") in Vermont.  The IPG is not a "channel" as referenced in the EPG Condition in Comcast's prior CPGs.  The IPG is a separate feature from the EPG and employs different technology.  It is an interactive and searchable software interface, which includes functions such as a "talking guide" and voice control.  Comcast inherited the IPG when it acquired the Adelphia cable systems in Vermont. Comcast has since enhanced the IPG, including as part of a conversion of its Vermont cable systems to all digital and the deployment of its X1 platform.  Comcast continues to offer variations of the IPG in Vermont, depending on the cable system technology and equipment to which each customer subscribes.

65.     The IPG includes programming information on a system-by-system basis among its interactive features.  Using the Channel 8 example above, because all of the cities and towns are served by the same Comcast cable system, subscribers in these areas have access to the same programming information for Channel 8 on the IPG even though the actual *content* on the channel is particular to each local community.  Comcast populates the IPG with descriptions such as "Local Programming X," "Y Government Programming," or "Z Access Programming" so that customers can identify the type of content on the channel regardless of which version of the programming carried on Channel 8 they can actually see in their community.  It is not technologically feasible for the current system to separate the IPG listing for Channel 8 to

provide individual program-specific information for multiple PEG access channels that share Channel 8. Nor would subscribers be able to watch the programming offered by other PEG access channels outside their local community.

66.     Since as early as 2008, VAN and the AMOs had requested that program-specific scheduling information for each and every PEG access channel be included in the IPG. Comcast had made clear to VAN, the AMOs, and the VPUC that it is not technically feasible for Comcast to do so because the IPG is and always has been programmed on a system-by-system basis.

67.     In the Renewal Proceeding, the Department proposed a condition that would require Comcast to provide program-specific scheduling information for PEG access channels on the IPG wherever it is technically feasible to do so (i.e., where only one PEG access channel is carried on a particular channel in a system).

68.     The VPUC rejected Comcast's Renewal Proposal and the Department's alternative proposal.  Instead, the VPUC imposed a new condition, Condition 22(3), which mandates that, within one year and at Comcast's sole expense, Comcast must "make such modifications to its facilities as are necessary to enable Comcast's [IPG] to provide program-specific scheduling information *for all PEG access channels* carried on its systems in Vermont." Final Order at 9-10 (emphasis added).

69.     It would cost approximately $4 million in operating costs for Comcast just to reengineer its facilities in Vermont to provide program-specific scheduling information for all PEG access channels.  Comcast would also incur additional increased annual operating costs. The VPUC acknowledged these significant costs, but imposed the new condition despite overwhelming evidence from Comcast cable subscribers in Vermont that they did not want to pay any additional fees for this PEG-related IPG feature.  *In fact, not one surveyed subscriber*

Downs
Rachlin
Martin PLLC

18

*affirmatively supported paying for it.* No other franchising authority in the country has ordered Comcast to make such costly system redesigns or to incur such ongoing additional operating costs.

70.    Under the Cable Act, the VPUC was required to determine whether this aspect of Comcast's Renewal Proposal was "reasonable to meet the future cable-related community needs and interests, *taking into account the cost of meeting such needs and interests*." 47 U.S.C. § 546(c)(1)(D) (emphasis added).  Sections 504 and 506 of the Vermont Statutes Annotated similarly requires the VPUC to give *due regard to available technology and the costs of any requirements* in a CPG.  30 V.S.A. §§ 504, 506.  In denying Comcast's Renewal Proposal, and imposing new Condition 22(3), the VPUC failed to properly ascertain the cost-benefit of this new condition in relation to the identified community needs and interests, as well as the available technology, in violation of the Cable Act and Vermont law.

71.    The VPUC further asserted that Comcast had failed to comply with the prior CPGs by failing to include program-specific scheduling information for all 45 PEG access channels as part of its enhancements *to the IPG*, stating for the first time in its Final Order on reconsideration that this constituted a violation of a "material term" of the prior CPG (i.e., *the EPG Condition*).  The VPUC ordered that Comcast must incur the approximately $4 million in costs of new Condition 22(3) out of Comcast's operating profits in Vermont due to such alleged noncompliance.

72.    This purported penalty is arbitrary and contradicts the VPUC's determination that Comcast substantially complied with most material terms in its prior CPG, pursuant to 47 U.S.C. § 546(c)(1)(A).  Renewal Order at 24.  Having made that determination, the VPUC cannot pick and choose among the terms of Comcast's prior CPG to justify onerous new conditions, like

Downs
Rachlin
Martin PLLC                                     19

Condition 22(3), that are otherwise unauthorized under federal law. *See id.* at 10 (a franchising authority is to consider whether a cable operator "has *substantially* complied with the material *terms* of the existing franchise," not each individual term in isolation) (emphasis added).

73.     Further, under the Cable Act, 47 U.S.C. § 546(d), and Vermont law, 30 V.S.A. § 509(b), the VPUC must give prior notice and an opportunity to be heard and, if necessary, cure any claimed violation of a CPG.  Section 546(d) of the Cable Act expressly provides that a franchising authority may not base denial of a franchise renewal proposal on alleged noncompliance with an existing CPG absent meaningful notice and an opportunity to cure.

74.     Prior notice and an opportunity to be heard on alleged noncompliance with a governmental order that grants a property interest, such as a CPG, are also minimum requirements under the Due Process Clause of the Fourteenth Amendment of the United States Constitution ("Due Process Clause").  U.S. CONST. amend. XIV, § 1.

75.     The VPUC has known about Comcast's inability to include program-specific scheduling information for PEG access channels on the IPG for at least nearly a decade.  The VPUC failed to provide *any* prior notice to Comcast that its inability to include program-specific scheduling information for PEG access channels on the IPG constituted an alleged violation of the EPG Condition in its prior CPGs.  Nor did the VPUC afford any meaningful opportunity for Comcast to be heard or, if necessary, attempt to cure any such alleged violation prior to the Renewal Proceeding.

76.     The VPUC's denial of this aspect of Comcast's Renewal Proposal, and imposition of the approximately $4 million in costs of Condition 22(3) on Comcast as a penalty for its alleged noncompliance with the EPG Condition, violate the Cable Act, Vermont law, and the Due Process Clause.

Downs
Rachlin
Martin PLLC

20

77.    In addition, the approximately $4 million in PEG-related operating costs of new Condition 22(3) imposed by the VPUC constitute franchise fees under the Cable Act. 47 U.S.C. § 542(g).  Such fees may not exceed 5 percent of Comcast's gross annual revenues.  *Id.* § 542(b).  Because the VPUC already assesses and Comcast already pays the maximum 5 percent in franchise fees allowed under federal law, the approximately $4 million in additional PEG-operating costs of Condition 22(3) must be offset against other franchise fees imposed by the VPUC.  The VPUC may not impose a conflicting requirement to this federal provision.

78.    Alternatively, the costs of Condition 22(3) will be borne by cable subscribers if such costs are deemed to be PEG-related capital costs.  In such a case, Comcast would be entitled to assess the costs as a line-item pass through to its cable subscribers in Vermont under Section 542(c) of the Cable Act.  47 U.S.C. § 542(c).  The VPUC's order requiring Comcast to pay such costs on its own contravenes Section 542(c).  It also contravenes Section 543, under which Comcast's subscriber rates are deregulated and therefore Comcast is fully permitted to pass through such costs to subscribers.  *Id.* § 543.  The VPUC may not impose a conflicting requirement to these federal provisions.

79.    Imposing the approximately $4 million in costs of Condition 22(3) on Comcast also exceeds the VPUC's statutory authority under Vermont law to assess monetary penalties against a cable operator for alleged noncompliance with a material term of a CPG.  30 V.S.A. § 509(b).  Section 509(b) requires prior notice and an opportunity to be heard on any such alleged noncompliance and any monetary penalties may not exceed "$1,000.00 per day nor a total of $20,000.00 for each violation unless otherwise provided in the certificate of public good, after giving due consideration to the size of the company, severity of the violation, and efforts to cure."  *Id.*

## Cable Television Line Extension Requirements – Conditions 13(7), 33, and 34

80.     In the Renewal CPG, the VPUC also imposed conditions that require Comcast to build 550 miles of additional lines of cable system in Vermont without regard to any specific locations or potential customers who may be served by the new facilities. These conditions disregard established statewide rules and guidelines, applicable to other cable operators, for meeting the needs of unserved areas. The VPUC claimed that it could impose the blanket 550 mile line extension mandate on Comcast because it is the "largest" cable operator in Vermont and can afford it. These discriminatory conditions contravene federal and state law, amount to undue speaker-based burdens on Comcast's protected speech under the First Amendment of the United States Constitution ("First Amendment"), U.S. CONST. amend. I, and deprive Comcast and its subscribers of the benefits of Vermont law enjoyed by other cable operators and their subscribers without a just and rational basis, in violation of the Common Benefits Clause of the Vermont Constitution ("Common Benefits Clause"). VT. CONST. ch. I, art. 7.

81.     Comcast's Renewal Proposal properly addressed its obligation to expand cable service into unserved areas consistent with Vermont's cable line extension policies and guidelines as embodied in 18-1 Vt. Code R. § 29:8.000, including Rule 8.313. Rule 8.313 requires that each cable company file a statement of the company's policy on expansions of service into unserved areas as a tariff for the Commission's approval, and establishes minimum requirements that each such policy must include. 18-1 Vt. Code R. § 29:8.313. Rule 8.313 supports the VPUC's interest in maximizing access to cable service in a fair, reasonable, and efficient manner by, among other things, establishing statewide guidelines. Comcast's Renewal Proposal for future line extensions would have incorporated these requirements and placed Comcast on an equal footing with other cable operators in Vermont.

82. The VPUC denied this aspect of Comcast's Renewal Proposal and instead imposed a new condition, Condition 33, which requires Comcast to construct "no less than 550 miles of line extensions into uncabled areas" during the 11-year renewal period. Renewal CPG at 9-10. Rather than following any statewide guidelines for meeting actual community needs, Condition 33 imposes an arbitrary line extension obligation without consideration of the specific locations and the potential customers served by the mandated extension.

83. The VPUC further ordered that Comcast may not count any line extensions that are funded by a state or federal grant towards this new 550 mile mandate.

84. Compliance with this arbitrary requirement will cost millions of dollars. For comparison, since Comcast completed its acquisition of the Adelphia systems in Vermont, it has spent on average over $31,000 per mile to construct line extensions, not only satisfying but also exceeding its obligations under the prior CPG.

85. In addition, the VPUC imposed two other conditions, Conditions 13(7) and 34, which together retain and modify a condition from the prior CPG that imposes unique and burdensome obligations on Comcast to "perform and provide an annual calculation of qualifying density in support of Comcast's line extension tariff." Final Order at 20. The VPUC has not imposed such obligations on any other cable operator in Vermont, compounding its arbitrary and discriminatory treatment of Comcast in the Renewal Proceeding.

86. The VPUC imposed these conditions without finding, based on a preponderance of the evidence, that they were reasonable or necessary to meet the future cable-related community needs and interests of Vermont cable subscribers, taking into account the costs of such measures. Because Comcast's proposed line extension condition mirrored the statewide requirements of Rule 8.313, which are applicable to all cable operators, the VPUC lacked any

Downs
Rachlin
Martin PLLC

23

rational or lawful basis to deny the proposal. Instead, the VPUC simply decreed that Comcast, as the largest cable operator in the State, is different from other operators and thus can be subject to more onerous line extension requirements. *See* Final Order at 19.

87.     The VPUC failed to consider the benefits and costs specific to Conditions 13(7), 33, and 34 and based its order instead on Comcast's "overall profitability," in violation of Section 546(c)(1)(D) of the Cable Act.

88.     The VPUC likewise disregarded Vermont's non-discriminatory policies for line extension conditions and the VPUC's own rules for determining when such build outs are economically rational. 30 V.S.A. § 517; 18-1 Vt. Code R. § 29:8.313. The VPUC simply decreed that, whatever the cost, Comcast is profitable enough to afford it. *See* Final Order at 17-18.

89.     Moreover, to the extent that the VPUC imposed Conditions 13(7) and 34 based on any alleged concerns about Comcast's prior line extension practices or tariffs, the VPUC failed to provide prior notice or any meaningful opportunity to address such concerns. Imposing these conditions on that ground thus contravenes 47 U.S.C. § 546(d) and basic procedural due process.

90.     As a cable operator, Comcast offers competing sources of information with other members of the press and is entitled to the rights and protections of the First Amendment. *Turner Broad. Sys., Inc. v FCC*, 512 U.S. 622, 636 (1994) ("There can be no disagreement on an initial premise:  Cable programmers and cable operators engage in and transmit speech, and they are entitled to the protection of the speech and press provisions of the First Amendment."). Article 13 of the Vermont Constitution  ("Article 13") affords the same rights and protections. VT. CONST. ch. I, art. 13.

Downs
Rachlin
Martin PLLC

24

91.     The blanket 550 mile line extension requirements in Condition 33 apply only to Comcast. Other cable operators in Vermont, such as Charter or Burlington Telecom, need only comply with the non-discriminatory line extension policies established by the VPUC in Rule 8.313.

92.     Condition 33 imposes speaker-based burdens on Comcast's speech. The VPUC was thus obligated to demonstrate that the blanket 550 mile line extension requirements are necessary to serve a compelling state interest and are narrowly drawn to achieve that interest. The VPUC failed to make, and cannot make, either showing.

93.     The VPUC gave Comcast complete "flexibility" as to where and when to build the 550 miles of line extensions mandated in Condition 33. Renewal Order at 4. The fact that Comcast could satisfy Condition 33 by extending lines anywhere and at any pace in its franchise area shows that Condition 33 is not narrowly tailored to serve a compelling state interest in providing cable service to unserved areas of Vermont.

94.     Further, by prohibiting Comcast from counting any line extensions to unserved Vermont communities funded by state or federal grants against the blanket 550 mile mandate, Condition 33 is clearly overinclusive. Comcast would violate the terms of the condition even if every possible uncabled community in its Vermont territory was served by a line extension paid for by a federal or state grant. This further shows that VPUC's real interest is not the expansion of cable access to unserved areas under any rational, non-discriminatory basis, but instead is a special operating tax imposed on Comcast based on its size and overall profitability.

95.     The additional and unique burdens and costs placed on Comcast by Condition 33 will make Comcast's cable services more expensive for existing and prospective subscribers than those offered by other video providers, including other cable franchisees. This will impose

Downs
Rachlin
Martin PLLC

25

undue burdens on the public's access to Comcast's services and impede Comcast from providing its expressive speech to members of the public. Existing subscribers may drop Comcast's service and prospective subscribers may choose competing services over Comcast.

96.     Condition 33 imposes undue, discriminatory burdens and costs on Comcast's speech in violation of the First Amendment and Article 13.

97.     In addition, the VPUC's imposition of Conditions 13(7), 33, and 34, which do not apply to or affect other Vermont cable operators or their subscribers, violates the Common Benefits Clause, which declares: "That government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community, and not for the particular emolument or advantage of any . . . set of persons, who are a part only of that community." The Common Benefits Clause is intended to ensure that the benefits and protections conferred by Vermont under its Constitution and laws are for the common benefit of the community and are not for the advantage of persons "who are a part only of that community."

98.     Conditions 13(7), 33, and 34 deny Comcast the protections conferred under Vermont law, which are enjoyed by other cable operators in the State, for the construction of line extensions based on non-discriminatory standards and where it is economically rational to do so. The discriminatory burdens and costs on Comcast and its operations are significant and do not bear a reasonable and just relation to the purported governmental interest. The additional and unique burdens and costs placed on Comcast by Conditions 13(7), 33, and 34 will make Comcast's cable services more expensive for existing and prospective subscribers than those offered by other video providers, including other cable franchisees. Other cable operators and their subscribers are omitted from the costs of such blanket line extension requirements, which are not tied to any rational criteria for meeting unserved community needs.

Downs
Rachlin
Martin PLLC

26

99.     For the same reasons shown above, these contested conditions are significantly underinclusive by omitting other cable operators. They are also significantly overinclusive by (a) requiring Comcast to satisfy the 550 mile build out and related obligations even in the absence of a request for service and (b) not counting any line extensions funded in whole or part by federal or state monies even though they serve uncabled communities in Vermont. Accordingly, the conditions are not reasonably necessary to accomplish the VPUC's claimed objective.

## Additional Costly Cable And Network Construction Requirements

100.    The Renewal CPG also imposes other conditions that would require Comcast to construct additional cable facilities for the transmission of PEG access programming from any local government building, school, or library in its service territory. The costs for these facilities would likewise be borne by Vermont cable subscribers. The conditions further require Comcast to provide dedicated institutional networks for voice, video, and data transmissions (including broadband Internet access) to governmental and educational entities on non-market terms. In imposing these additional requirements, the VPUC again ignored the applicable federal and state standards for franchise renewals and instead asserted that the conditions were justified based on Comcast's "overall profitability."

## Remote Origination Site Construction – Conditions 21(b) and (c)

101.    Comcast has supported PEG access channels in Vermont by constructing facilities that enable them to transmit live programming from municipal buildings, schools, libraries, and other governmental sites. These facilities are known as "remote origination sites."

102.    Under its prior CPG, Comcast was obligated to "provide fiber-optic or coaxial-cable drops, capable of two-way service and remote origination service, upon request, to every

school, library, and PEG-access studio, and to at least one municipal building in every municipality" in Comcast's service area. The condition "d[id] not require Comcast to provide drops to buildings that are neither passed by nor located within 500 feet of cable plant unless an entity is willing to reimburse Comcast for the incremental cost of the non-standard installation." Renewal Order at 41. The term "cable plant" was not defined.

103. In its Renewal Proposal, Comcast clarified the term "cable plant" to reflect changes to its current systems that occurred over the term of the prior CPG, including Comcast's investment of millions of dollars to upgrade its network infrastructure to fiber. Specifically, the Renewal Proposal clarified that a requested remote origination site must be "within 500 feet" of Comcast's fiber network (i.e., its "I-Net/return line designated fiber"). Renewal Order at 43.

104. The VPUC denied this aspect of Comcast's Renewal Proposal and adopted a condition, proposed by the Department, that broadly interprets "cable plant" to include both coaxial cable and fiber-optic lines. This condition potentially requires Comcast to construct remote origination sites many miles away from the fiber network that it now uses to deliver video back to its system "headends" (i.e., a headend is a master facility for receiving television signals for processing and distribution over Comcast's cable system).

105. Comcast submitted cost estimates for new origination return lines ranging from approximately $4,000 to more than $120,000 depending on the location and distance from its fiber network. The record evidence in the Renewal Proceeding showed that Vermont cable subscribers were unwilling to pay for such costs.

106. Under federal law, the VPUC had the obligation to determine whether future community needs and interests justified the costs and burdens of this condition based on a preponderance of the evidence. 47 U.S.C. § 546(c)(1)(D), (e)(2)(B). Under Vermont law, the

VPUC should have likewise considered the costs of this new condition in light of available technology. 30 V.S.A. §§ 504, 506.

107.    Instead of complying with these requirements, the VPUC asserted that Comcast "ha[d] an obligation to petition the Board for a clarification or amendment to its existing CPG so that the Board can make an assessment as to the reasonableness of any modification in light of community benefits and costs." Renewal Order at 47. The VPUC further asserted that Comcast's "overall profitability" was "used as a metric for determining whether Comcast's Vermont operations could bear the costs of requirements determined to be necessary to meet community needs." Final Order at 17, 26. The VPUC stated that "factors that are more within Comcast's control (such as the operating margins it maintains), appear to be much more significant factors in determining Comcast's prices for services . . . than any costs to Comcast attributable to the contested conditions will be." *Id.* at 27-28.

108.    The VPUC improperly disregarded federal and Vermont law by imposing these conditions based on Comcast's "overall profitability" rather than determining, based on a preponderance of the evidence, that the costs of the conditions could be justified based on future community needs and interests, and in light of available technology. 47 U.S.C. § 546(c)(1)(D), (e)(2)(B); 30 V.S.A. §§ 504, 506.

**Simultaneous Live PEG Programming/In-House Switching Ability – Conditions 24 and 30**

109.    In addition to imposing onerous remote origination site obligations on Comcast as part of the Renewal CPG, the VPUC further mandated that Comcast must provide AMOs the ability (a) to transmit different live PEG programming simultaneously and (b) to control upstream signals from each remote origination site rather than having the signals go directly to Comcast for live retransmission on a PEG access channel.

110.    Specifically, the Renewal CPG mandates that "Comcast shall provide AMOs the ability to originate as many simultaneous live PEG programs on any part of its system as there are forward PEG channels on that part of the system." Renewal CPG at 7 (Condition 24).

111.    The Renewal CPG further mandates that "Comcast shall provide the AMO an in-house ability to control upstream signals from each remote origination site within the AMO's service territory." Renewal CPG at 9 (Condition 30).

112.    Any costs incurred by Comcast to comply with these mandates would constitute PEG-related operating costs, 47 U.S.C. § 542(g), subject to the 5 percent cap on franchise fees in 47 U.S.C. § 542(b). Alternatively, if any of these costs are deemed to be PEG capital or related costs, Comcast is expressly entitled to assess such costs as a line-item pass through to its cable subscribers in Vermont under Section 542(c) of the Cable Act. 47 U.S.C. § 542(c).

113.    In imposing these new conditions, the VPUC failed to address how the costs of such mandates should be treated. However, in addressing the costs of other contested conditions, the VPUC has prohibited Comcast from treating PEG-related operating costs as franchise fees, in violation of Comcast's express rights to do so under the Cable Act.

114.    These aspects of the Renewal CPG and VPUC orders create a justiciable controversy over the proper treatment of the costs of complying with Conditions 24 and 30, entitling Comcast to a declaration that such costs must be treated in accordance with the Cable Act. 47 U.S.C. § 542(b), (c).

### I-Net Obligations and Service Contract Limitations – Conditions 50 to 55

115.    Comcast further supports local governmental entities in Vermont by providing institutional network facilities ("I-Nets"). An I-Net is a dedicated non-residential network that businesses and governmental entities can use for voice, video, and data transmissions (including

broadband Internet access). Rather than including any specific I-Net provision in its Renewal Proposal, Comcast made clear to the VPUC that it would negotiate any requests for I-Nets by local governmental entities on commercially reasonable terms between the parties.

116.    In its Renewal CPG, the VPUC rejected Comcast's approach and re-imposed non-market conditions from the prior CPG without making any factual findings to support its decision. Specifically, Conditions 50 to 55 (a) mandate that Comcast must respond to any request for proposal for an I-Net by a government agency, educational institution, or an educational or governmental access entity and (b) arbitrarily limit Comcast's proposed charges for any I-Net to "fully-allocated costs, including a rate of return of 11.25%." The conditions further restrict the commercially negotiable terms of any proposed service contract that Comcast proposes for the I-Net.    If Comcast's I-Net proposal, as cabined by these non-market requirements, is accepted, Comcast is "obligated to provide service on the terms of the RFP or pursuant to the contract with the entity." Renewal CPG at 13-14.

117.    The VPUC failed to provide any basis for denying this aspect of Comcast's Renewal Proposal, much less to establish that it was inadequate to address future cable-related community needs given the associated costs.

118.    Similarly, in imposing Conditions 50 to 55, the VPUC failed to ascertain the future cable-related community needs and interests in relation to the costs of these conditions. Instead, the VPUC asserted, in its Final Order denying reconsideration, that Comcast failed to explain "why these conditions were no longer required to meet previously identified community needs and interests taking into account the costs of meeting such needs." Final Order at 22. There is no presumption under the Cable Act that conditions from an expiring CPG, in this instance imposed over a decade ago, are still necessary or cost-effective to meet *future* cable-

Downs
Rachlin
Martin PLLC

31

related community needs, as Section 546 requires. 47 U.S.C. § 546(c)(1)(D). Nor is there any basis to find that the provision of I-Nets to local governmental entities on commercially reasonable terms, as Comcast is prepared to do, will not adequately serve such future needs. For example, the VPUC did not impose such I-Net conditions in its recent renewal of Charter's CPG in Vermont.

119.    The VPUC denied this aspect of Comcast's Renewal Proposal and imposed Conditions 50 to 55 in the Renewal CPG without any proper basis in the record and in contravention of 47 U.S.C. §§ 541(b)(3)(D) and 546(c)(1)(D).

**COUNT I**

**(Violation of the Procedural Requirements of 47 U.S.C. § 546)**

120.    Comcast incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1-119 above.

121.    The VPUC denied Comcast's Renewal Proposal and adopted instead a Renewal CPG that unilaterally imposes alternative conditions on Comcast. This constitutes a denial of Comcast's Renewal Proposal under the Cable Act. 47 U.S.C. § 546(e)(1).

122.    The VPUC based its denial of Comcast's Renewal Proposal and imposition of Condition 22(3) in part on adverse findings with respect to § 546(c)(1)(A), asserting that Comcast did not substantially comply with material terms of its prior CPGs.

123.    Section 546(d) prohibits the VPUC from denying a renewal proposal on the basis of an adverse finding with respect to Section 546(c)(1)(A) unless the VPUC provided the cable operator with prior notice and the opportunity to cure.

124.    The VPUC did not give Comcast prior notice and opportunity to cure as required under Section 546(d), despite the VPUC's longstanding knowledge that it was technically

infeasible for Comcast to include program-specific scheduling information for every PEG access channel on the IPG.

125.    Nor did the VPUC give prior notice of or opportunity to cure any alleged violation of Comcast's line extension calculations and reporting under the prior CPGs before imposing Condition 34.

126.    In denying Comcast's Renewal Proposal on the basis of alleged noncompliance with its prior CPGs, without prior notice and the opportunity to cure, the VPUC violated the procedural requirements of Section 546.

127.    Comcast has been harmed, and will continue to suffer harm, as a result of the VPUC's failure to comply with the procedural requirements of Section 546.

128.    The VPUC's denial is final pursuant to 47 U.S.C. § 546(f).

**COUNT II**

**(Violation of Substantive Requirements of 47 U.S.C. §§ 541 and 546)**

129.    Comcast incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1-128 above.

130.    The VPUC found that Comcast had substantially complied with its prior CPGs, pursuant to 47 U.S.C. § 546(c)(1)(A).  In denying Comcast's Renewal Proposal and imposing Conditions 22(3) and 34 on the theory that Comcast failed to comply with its prior CPGs, the VPUC acted in violation of 47 U.S.C. § 546(c)(1)(A).

131.    In denying Comcast's Renewal Proposal and imposing Conditions 50 to 55, the VPUC exceeded its authority under 47 U.S.C. § 541(b)(3)(D).

132.    In addition, the VPUC denied Comcast's Renewal Proposal without making the necessary findings, based on a preponderance of the evidence, that it was not reasonable to meet

Downs
Rachlin
Martin PLLC

33

future community needs and interests, taking into account the costs of meeting those needs and interests, in violation of Section 546(c)(1)(D).

133.    The VPUC likewise violated Section 546(c)(1)(D) by failing to make the necessary findings, based on a preponderance of the evidence, that each of the contested conditions in the Renewal CPG are reasonable to meet future community needs and interests, taking into account the costs of meeting those needs and interests. The VPUC instead purported to justify such costs based on Comcast's "overall profitability" and in disregard of the Department's ascertainment and other record evidence, including the adverse effects of the Renewal CPG on Comcast cable subscribers' rates.

134.    Comcast has been harmed, and will continue to suffer harm, as a result of the VPUC's adverse findings and failure to comply with the requirements of Sections 541 and 546.

135.    The VPUC's denial of Comcast's Renewal Proposal and imposition of the contested conditions in the Renewal CPG are final pursuant to 47 U.S.C. § 546(f).

## COUNT III

### (Violation of 47 U.S.C. §§ 542 and 543)

136.    Comcast incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1-135 above.

137.    The VPUC has ordered that Comcast pay the approximately $4 million in costs to comply with the IPG requirements for PEG access channels imposed under new Condition 22(3) of the Renewal CPG.

138.    Such PEG-related operating costs constitute franchise fees under the Cable Act, 47 U.S.C. § 542(g), and are therefore subject to the 5 percent cap established by Congress, *id.* § 542(b).

139.    The VPUC lacks legal authority to require Comcast to incur such costs to the extent that they would exceed the 5 percent cap in 47 U.S.C. § 542.

140.    Because the VPUC already assesses and Comcast already pays the maximum 5 percent of franchise fees permitted under 47 U.S.C. § 542(b), any costs incurred by Comcast to comply with new Condition 22(3) of the Renewal CPG must be offset against other franchise fees assessed by the VPUC.

141.    Alternatively, if the approximately $4 million in costs to comply with the IPG requirements imposed under new Condition 22(3) of the Renewal CPG are deemed to be PEG capital or related costs, Comcast is entitled to assess such costs as a line-item pass through to its cable subscribers in Vermont under 47 U.S.C. § 542(c).

142.    In either event, the VPUC's order requiring Comcast to pay such costs "at its expense" violates and conflicts with Section 542 and is therefore preempted under 47 U.S.C. § 556(c) and the Supremacy Clause of the United States Constitution ("Supremacy Clause").  U.S. CONST. art. VI, cl. 2.

143.    Because Comcast's cable subscriber rates are deregulated, the VPUC's order that Comcast must pay the approximately $4 million in costs to comply with Condition 22(3) violates and conflicts with 47 U.S.C. § 543, also triggering preemption under 47 U.S.C. § 556(c) and the Supremacy Clause.

144.    Comcast has been harmed, and will continue to suffer harm, as a result of the VPUC's adverse findings and failure to comply with the requirements of Sections 542 and 543.

145.    The VPUC's denial of Comcast's Renewal Proposal and imposition of the contested conditions in the Renewal CPG are final pursuant to 47 U.S.C. § 546(f).

Downs
Rachlin
Martin PLLC

146.     In addition, the VPUC's imposition of Conditions 24 and 30 of the Renewal Proposal creates a justiciable controversy over whether Comcast's costs to comply with these mandates constitute franchise fees subject to the 5 percent cap in 47 U.S.C. § 542.

## COUNT IV

### (Violation of 30 V.S.A. §§ 504 and 506)

147.     Comcast incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1-146 above.

148.     The VPUC denied Comcast's Renewal Proposal without giving proper consideration to whether it would provide "a reasonable quality of service for basic, premium, or otherwise, having regard to available technology, subscriber interest, and cost," as required under 30 V.S.A. § 504.  These criteria apply to renewal proceedings such as the Renewal Proceeding here.  30 V.S.A. § 506.

149.     The VPUC likewise violated 30 V.S.A. §§ 504 and 506 by failing to consider whether the contested conditions in the Renewal CPG are reasonable given available technology, subscriber interest, and cost.

150.     Comcast has been harmed, and will continue to suffer harm, as a result of the VPUC's failure to comply with 30 V.S.A. §§ 504 and 506.

## COUNT V

### (Violation of 30 V.S.A. § 517 and 18-1 Vt. Code R. § 29:8.313)

151.     Comcast incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1-150 above.

152.     Under 30 V.S.A. § 517(e), the VPUC may require line extensions: (i) "when a company receives a bona fide request for service from a reasonable number of verified

Downs
Rachlin
Martin PLLC

36

customers" or (ii) "with reasonable contributions in aid of construction from customers." 30 V.S.A. § 517(e).  These statutory guidelines were implemented in 18-1 Vt. Code R. § 29:8.313.

153.    The VPUC's imposition of the 550 mile line extension and annual line density calculation requirements in Conditions 13(7), 33, and 34 of the Renewal CPG violates 30 V.S.A. § 517(e) and 18-1 Vt. Code R. § 29:8.313.

154.    Comcast has been harmed, and will continue to suffer harm, as a result of the VPUC's failure to comply with 30 V.S.A. § 517 and 18-1 Vt. Code R. § 29:8.313.

## COUNT VI

### (Violation of 30 V.S.A. § 509)

155.    Comcast incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1-154 above.

156.    Under 30 V.S.A. § 509(b), the VPUC may only penalize a cable operator for violation of a material condition of its CPG after providing notice and a reasonable opportunity to cure the violation.  The maximum civil penalty for such a violation may not exceed $20,000. 30 V.S.A. § 509(b).

157.    The VPUC has ordered Comcast to incur the approximately $4 million in costs to comply with new Condition 22(3) of the Renewal CPG as a penalty for alleged noncompliance with its prior CPGs.

158.    The VPUC has assessed this penalty against Comcast without prior notice or a reasonable opportunity to address the alleged noncompliance, in violation of 30 V.S.A. § 509(b).

159.    The amount of the costs imposed on Comcast by the VPUC under its Renewal and Final Orders also exceeds the maximum amount permitted under 30 V.S.A. § 509(b).

160.     Comcast has been harmed, and will continue to suffer harm, as a result of the VPUC's failure to comply with 30 V.S.A. § 509.

## COUNT VII

### (Violation of Procedural Due Process)

161.     Comcast incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1-160 above.

162.     Comcast is a person within the meaning of 42 U.S.C. § 1983.

163.     Comcast has a protected property interest in the renewal of its CPG to provide cable television service to communities in the State of Vermont.

164.     Comcast is entitled to procedural due process in connection with the renewal of its CPGs under the Due Process Clause.

165.     The VPUC has purported to act pursuant to the police powers granted under Vermont law in denying Comcast's Renewal Proposal and adopting the Renewal CPG with the contested conditions.

166.     The VPUC has violated Comcast's rights and protections under the Due Process Clause by taking actions and issuing rulings, findings, and orders that disregard the procedural and/or substantive requirements of (a) 47 U.S.C. §§ 542, 543, and 546; and (b) 30 V.S.A. §§ 504, 506, 509, 517(e), and 18-1 Vt. Code R. § 29:8.313.

167.     Comcast has been harmed, and is continuing to be harmed, by the VPUC's failure to act in accordance with the Due Process Clause.

168.     Comcast is entitled to protection and vindication of its federal rights under the Due Process Clause and 42 U.S.C. § 1983, including a decree that the contested conditions in the Renewal CPG are void and unenforceable under Section 1983.

Downs
Rachlin
Martin PLLC

38

## COUNT VIII

### (Violation of the First Amendment and Article 13 of the Vermont Constitution)

169.     Comcast incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1-168 above.

170.     Comcast is a person within the meaning of 42 U.S.C. § 1983.

171.     Comcast is a cable operator and, as such, is a member of the press.  Along with other members of the press, Comcast has rights and protections under the First Amendment and Article 13.  Federal, state, or local laws and regulations that single out members of the press are subject to heightened scrutiny under the First Amendment.

172.     The 550 mile line extension requirement in Condition 33 of the Renewal CPG is a unique and discriminatory requirement imposed by the VPUC on Comcast that constitutes a speaker-based burden on Comcast's speech rights.  No other cable operators in Vermont have been burdened by such a requirement.  Rather, other cable operators are subject to line extension policies and requirements established under 30 V.S.A. § 517(e) and 18-1 Vt. Code R. § 29:8.313.

173.     The VPUC has purported to act pursuant to the police powers granted under Vermont law in denying Comcast's Renewal Proposal and imposing Condition 33 of the Renewal CPG.

174.     The VPUC has failed to justify Condition 33 as necessary to serve a compelling state interest.  Nor has the VPUC shown that Condition 33 is narrowly tailored to achieve a compelling state interest.

175.     The VPUC has unduly infringed Comcast's rights and protections under the First Amendment and Article 13.

Downs
Rachlin
Martin PLLC

39

176. Comcast has been harmed, and is continuing to be harmed, by the VPUC's failure to act in accordance with these laws.

177. Comcast is entitled to the protection and vindication of its federal rights under 42 U.S.C. § 1983, including a decree that the contested conditions in the Renewal CPG are void and unenforceable under the First Amendment and Section 1983.

178. Comcast is further entitled to a decree that the contested conditions in the Renewal CPG violate constitutional protections accorded to Comcast under Article 13.

**COUNT IX**

**(Violation of Common Benefits Clause of Article 7 of the Vermont Constitution)**

179. Comcast incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1-178 above.

180. The disparate treatment of Comcast and its subscribers under Condition 33 violates the Common Benefits Clause, which applies to administrative or quasi-judicial determinations as well as legislative enactments.

181. The discriminatory burdens and costs of the blanket 550 mile line extension obligations imposed on Comcast, its operations, and subscribers are significant and do not bear a reasonable and just relation to the VPUC's purported governmental interest.  Other cable operators and their subscribers are omitted from such blanket line extension requirements, which are not tied to any rational criteria for meeting unserved community needs.

182. Condition 33 is significantly underinclusive because it omits other cable operators.  It is also overinclusive because it obligates Comcast to satisfy the 550 mile build out requirements even in the absence of a request for service and without allowing any line extensions funded by state or federal monies to count toward the blanket 550 mile mandate.

183.    Condition 33 is not reasonably necessary to accomplish the VPUC's claimed objective, and unjustly deprives Comcast of its rights and protections under the Vermont Constitution and Vermont state law.

184.    Comcast has been harmed, and is continuing to be harmed, by the VPUC's failure to act in accordance with the Common Benefits Clause.

**PRAYER FOR RELIEF**

WHEREFORE, Comcast respectfully requests that this Court enter judgment in Comcast's favor on each count of this Complaint as follows:

   a.    Finding and entering an order declaring that the VPUC has unlawfully:

      i.   denied Comcast's Renewal Proposal in violation of the Cable Act and Vermont law;

      ii.  exceeded its authority under, and contravened the requirements of, the Cable Act and Vermont law by adopting the Renewal CPG with the contested conditions;

      iii. denied Comcast prior notice and a meaningful opportunity to be heard on its alleged noncompliance with Condition 23(3) of the prior CPGs in violation of the Cable Act and Vermont law;

      iv.  violated the Cable Act by ordering Comcast to incur the approximately $4 million in costs imposed by Condition 22(3) as a penalty for its alleged noncompliance with a different condition in its prior CPGs;

      v.   exceeded its authority under Vermont law to penalize Comcast for its alleged noncompliance with Condition 23(3) of its prior CPGs;

Downs
Rachlin
Martin PLLC

41

    vi.   infringed on Comcast's rights and protections under the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

   vii.   infringed on Comcast's rights and protections under the First Amendment of the United States Constitution and Article 13 of the Vermont Constitution; and

  viii.   infringed on Comcast's rights and protections under Article 7 of the Vermont Constitution.

b.    Finding and entering an order declaring that Comcast's costs to comply with Conditions 24 and 30 of the Renewal CPG constitute franchise fees subject to the 5 percent cap in 47 U.S.C. § 542.

c.    Granting Comcast temporary and permanent injunctive relief enjoining the VPUC from enforcing Conditions 13(7), 21(b) and (c), 22(3), 33, 34, and 50 to 55 of the Renewal CPG.

d.    Granting Comcast temporary and permanent injunctive relief compelling the VPUC to strike Conditions 13(7), 21(b) and (c), 22(3), 33, 34, and 50 to 55 from the Renewal CPG.

e.    Remanding this matter to the VPUC for further proceedings to modify the Renewal CPG consistent with this Court's rulings.

f.    Granting such other relief as the Court deems just and equitable.

Dated at Burlington, Vermont this 28th day of August, 2017.

DOWNS RACHLIN MARTIN PLLC


By: _____
Christopher D. Roy
Attorneys for Plaintiff
199 Main Street
P.O. Box 190
Burlington, VT 05402 0190
Tel.:  (802) 863 2375
Email:  croy@drm.com

*Of Counsel*:

David P. Murray, Esq.
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006-1238
Tel.: (202) 303-1112
Email: dmurray@willkie.com

17740843.1