UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

COMCAST OF CONNECTICUT/ )
GEORGIA/ MASSACHUSETTS/ NEW )
HAMPSHIRE/ NEW YORK/ NORTH )
CAROLINA/ VIRGINIA/ VERMONT, LLC )
d/b/a COMCAST, )
                                                        )
    Plaintiff, )
                                                        )
    v. )      Case No. 5:17-cv-161
                                                        )
THE VERMONT PUBLIC UTILITY )
COMMISSION, and SARAH HOFFMANN )
and JAMES VOLZ, in their official )
capacities as members of THE VERMONT )
PUBLIC UTILITY COMMISSION, )
                                                        )
    Defendants. )

**ORDER ON MOTION TO INTERVENE**
**(Doc. 25)**

Plaintiff Comcast of Connecticut/Georgia/Massachusetts/New Hampshire/New York/North Carolina/Virginia/Vermont, LLC d/b/a Comcast ("Comcast") has filed this action seeking judicial review of recent orders of the Vermont Public Utility Commission ("VPUC") or its predecessor the Vermont Public Service Board ("PSB")[1] in Docket No. 8301. These orders concern renewal of the Certificate of Public Good ("CPG") authorizing Comcast to operate within Vermont. (Doc. 1.) The orders at issue include the Order entered on January 13, 2017 (Doc. 1-1), the Renewed and Consolidated Certificate of Public Good entered on the same date (Doc. 1-2), and the Order denying a motion to alter or amend judgment entered on July 27, 2017 (Doc. 1-4). Comcast asserts that the renewal CPG is unlawful because it imposes arbitrary

---

[1] Effective July 1, 2017, the PSB's name was changed to the Vermont Public Utility Commission. *See* 30 V.S.A. § 3.

conditions on Comcast's Vermont cable operations, including a requirement that Comcast make costly engineering changes to accommodate what it says are unreasonable demands from local public, educational, and governmental ("PEG") access channels. (Doc. 1 ¶¶ 3–4.) Currently pending is a motion to intervene under Fed. R. Civ. P. 24(b)(2) filed by the Vermont Access Network, Inc. ("VAN").

## Background and Procedural History

VAN is a non-profit umbrella organization made up of Vermont Access Management Organizations (AMOs). These are the organizations that operate PEG channels. VAN is a relatively large organization with 78 full-time employees. Another 103 work part-time. Through 66 PEG channels, VAN presents more than 16,800 programs each year. VAN is also engaged in advocacy on behalf of public access television. (*See* Doc. 25 at 3.) VAN participated as a party in the VPUC franchise renewal proceeding. (*See* Doc. 1-2 at 6 (noting that the PSB granted VAN's motion to intervene on March 25, 2015).)[2]

Since filing of the complaint in August 2017, the parties and the court agreed to stay discovery pending decision on a motion for partial dismissal filed by the VPUC. The motion was filed on December 18, 2017. (Doc. 22.) VAN filed its motion to intervene on December 29, 2017. (Doc. 25.) Comcast filed an amended complaint on January 8, 2018. (Doc. 29.) VPUC filed a second motion to dismiss on January 22, 2018, which addresses the amended complaint. (Doc. 32.) Briefing on the motion to dismiss is scheduled to be complete in March 2018.

---

[2] *See also In re: Renewal of the Certificate of Public Good of Comcast of Connecticut/ Georgia/Massachusetts/New Hampshire/New York/North Carolina/Virginia/Vermont, LLC, d/b/a Comcast, expiring on December 29, 2016, to provide cable television service*, No. 8301 (Vt. Pub. Serv. Bd. Mar. 25, 2015) (granting VAN's motion for permissive intervention under Board Rule 2.209(B)).

2

Comcast has filed an opposition to the motion to intervene. (Doc. 30.) It argues, among other things, that VAN's participation as a party is not authorized by 47 U.S.C. § 546(e), which governs judicial review of state and municipal cable franchise renewals. VAN has filed a reply, arguing that § 546(e) does not prevent intervention. (Doc. 33.)

## Analysis

### I. Requirements of Rule 24(b)

Rule 24(b)(1) allows permissive intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).[3]

> To be granted intervention as of right or by permission, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."

*Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)); *see also Vt. All. for Ethical Healthcare, Inc. v. Hoser*, No. 5:16-cv-205, 2016 WL 7015717, at *2 (D. Vt. Dec. 1, 2016) (listing the four factors as guiding the court in making its discretionary decision about permitting intervention). The court must also consider whether intervention "will unduly delay or prejudice the adjudication of the rights" of the existing parties. Fed. R. Civ. P. 24(b)(3).

In contrast to intervention of right under Rule 24(a)(2), which requires an "interest" in the underlying lawsuit as a condition for intervention as of right, Rule 24(b) is less demanding. *See SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940) (permissive intervention provision "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation"). Rule 24(b) requires a showing that the

---

[3] The rule also allows intervention of anyone who "is given a conditional right to intervene by a federal statute." Fed. R. Civ. P. 24(b)(1)(A). VAN does not argue that any such federal statute applies in this case.

3

proposed intervenor has a claim or defense that "shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

## II. Rule 24(c)'s "Pleading" Requirement

Comcast asserts that VAN's motion should be denied for failure to comply with Rule 24(c), which requires an intervention motion to "state the grounds for intervention *and be accompanied by a pleading* that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c) (emphasis added). VAN has not included any pleading with its motion to intervene, but it argues that no pleading is required because its position is clearly articulated in its motion. (Doc. 33 at 14.)

In this case, the technical failure to comply with Rule 24(c)'s pleading requirement is not a sufficient basis upon which to deny the motion. *See Klein v. Nu-Way Shoe Co.*, 136 F.2d 986, 989 (2d Cir. 1943) (objection based on failure to attach answers to applications to intervene was "trivial"); *Windsor v. United States*, 797 F. Supp. 2d 320, 325 (S.D.N.Y. 2011) ("Where . . . the position of the movant is apparent from other filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements." (quoting *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002))). Here, VAN's position is sufficiently clear and Comcast has not indicated how it might be prejudiced by proceeding to the merits of the intervention motion.

## III. Timeliness; Undue Delay or Prejudice

In this case, the motion is clearly timely. It follows the filing of the amended complaint by a few days and comes at the very outset of the case. Similarly, the addition of VAN and its counsel in a case that will largely be decided upon the administrative record established before the VPUC is unlikely to cause undue delay or prejudice.

## IV. Interest in the Action; Potential for Impairment of Interest; Adequacy of Representation

In *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940), the Supreme Court recognized that Rule 24(b) permitted intervention by persons who lacked "direct personal or pecuniary interest in the subject of the litigation." The SEC sought to intervene in a Chapter 11 bankruptcy case on the ground that the proposed plan was unfair to unsecured debtors and that a liquidation overseen by an independent trustee and subject to SEC oversight was preferable. The Court permitted the SEC to intervene because "the Commission ha[d] a sufficient interest in the maintenance of its statutory authority and the performance of its public duties to entitle it through intervention to prevent reorganizations, which should rightly be subject to its scrutiny from proceeding without it." *Id.* at 460.

Upholding the right of a public agency to intervene in a case clearly lying within its sphere of regulatory concern is uncontroversial. *See* Fed. R. Civ. P. 24(b)(2) (special rule for permissive intervention by government officer or agency); *see also, e.g., Nuesse v. Camp*, 385 F.2d 694, 706 (D.C. Cir. 1967) ("While a public official may not intrude in a purely private controversy, permissive intervention is available when sought because an aspect of the public interest with which he is officially concerned is involved in the litigation."); *All Am. Airways, Inc. v. Vill. of Cedarhurst*, 201 F.2d 273, 274 (2d Cir. 1953) (intervention by Administrator of Civil Aeronautics and Civil Aeronautics Board was proper). But the courts have had less success in defining with clarity when a non-profit organization such as VAN has a recognizable claim or interest in a lawsuit that will support permissive intervention.

Obviously VAN—like many similar non-profits engaged in advocacy on public issues—takes a lively interest in the outcome of the litigation. Since its membership of public access stations lack their own broadcast or cable networks, these stations depend on networks

maintained by cable operators like Comcast to reach their viewers. Any change in the conditions under which Comcast must carry their programming affects them greatly. This lawsuit was prompted by changes in those conditions as they are set out in the new VPUC franchise order. VAN clearly has an interest in this action that may be impaired by the disposition of this case, particularly if Comcast succeeds on the merits of its appeal.

Comcast argues that intervention is inappropriate because VAN's interests will be adequately represented by the State in this case. (Doc. 30 at 16.) VAN maintains that adequate representation by another party is only grounds for denying as of right intervention, whereas for permissive intervention the adequacy of representation by other parties is merely a minor "factor" for consideration. (Doc. 33 at 11–12.) VAN also argues that permissive intervention is warranted because of "the special status of AMOs, . . . VAN's participation below, and its familiarity with some of the technical claims that may be made in connection with this appeal." (*Id.* at 12–13.)

In *Floyd*, the Second Circuit stated that failure to satisfy any one of the four "requirements" for intervention (including adequacy of protection of interest by other parties) "is a sufficient ground to deny the application." 770 F.3d at 1057 (quoting *"R" Best Produce*, 467 F.3d at 241). The court did not distinguish between intervention as of right or by permission. In fact, the court held that the District Court in that case "acted within its discretion in denying . . . motions to intervene as of right *and* by permission" for failure to meet the first and second of the four requirements. *Id.* at 1058. This court has denied Rule 24(b) intervention in cases where it found that the State adequately represented the interests of the applicants. *See, e.g., Grocery Mfrs. Ass'n v. Sorrell*, No. 5:14-cv-117, 2014 WL 12644264, at *7 n.2 (D. Vt. Oct. 7, 2014) (denying permissive intervention because would-be intervenors' interests were

6

adequately represented by the State); *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, No. 1:11-cv-99-jgm, 2011 WL 2173785, at *5 (D. Vt. June 2, 2011) ("Movants' interests are adequately represented by Vermont . . . .").

But *Floyd* goes no further than stating that failure to satisfy one of the four "requirements" is a "sufficient" ground to deny intervention. It does not hold that failure to satisfy one of the four factors necessarily requires denial of intervention in all cases. Rather, courts apply the factors in a "flexible and discretionary way, considering all four factors as a whole rather than focusing narrowly on any one of the criteria." *Windsor*, 797 F. Supp. 2d at 323–24 (internal quotation marks omitted); *see also Tachiona*, 186 F. Supp. 2d at 394 (citing *United States v. Hooker Chemicals & Plastics*, 749 F.2d 968, 983 (2d Cir. 1984)).

Here, the court anticipates that the State of Vermont will ably litigate this case. Still—in light of VAN's participation in the franchise renewal proceeding, VAN's experience with the technical issues, and VAN's particular interest in Comcast's claims attacking the enforceability of the CPG conditions relating to PEG access channels—the court concludes that the State's representation in this case is not a bar to VAN's intervention. This conclusion is reinforced by the court's analysis herein of the other three factors identified in *Floyd*, all of which favor intervention.

## V. Whether VAN has a Claim or Defense Sharing a Common Question of Law or Fact

VAN relies upon Rule 24(b)(1)(B) and argues that it has "a direct interest in the outcome of this proceeding. It and its members' interest in the effective operation and broad availability and accessibility of PEG programming will be directly affected should Comcast prevail in this action." (Doc. 25 at 4.) It argues that it played an important role in shaping the PEG conditions in the VPUC renewal order and certificate of public good. It seeks to defend these conditions in

this case. The court has no difficulty concluding that the positions of VAN and Vermont share common questions of law or fact.

Whether VAN has a "claim or defense" sharing those common questions is a closer question. Comcast maintains that VAN can identify no "claim or defense" because in contrast to the underlying administrative proceeding, VAN has received no right to intervene by statute and cannot have either a claim or a defense in a proceeding in which it cannot achieve party status. In Comcast's view, the judicial review provision of the Cable Act, 47 U.S.C. § 546(e), creates an "exclusive right of action . . . for *cable operators* to seek appellate review of a cable franchise renewal." (Doc. 30 at 9 (emphasis in original).) Only a party or potential party can have a claim or a defense. Comcast contends that because only a cable operator may appeal, intervention by other parties, however keen their interest may be in the outcome, is not permitted.

The court rejects Comcast's argument that VAN cannot establish a "claim or defense" as contemplated by Rule 24.

The appeal process that brings Comcast's claim before this court explicitly specifies who may bring such an appeal. Section 546(e) of Title 47 allows for appeals only by "cable operators." *See also* 47 U.S.C. § 555 (same). "Cable operator" is defined by 47 U.S.C. § 522(5) as a person providing cable service or who controls such a system. VAN makes no claim to be such an entity.

The Cable Act authorizes legal action by cable operators against the local franchise authorities for denying a franchise application, 47 U.S.C. § 541(a)(2), refusing to modify franchise requirements, *id.* § 544(b)(1), and refusing to renew a franchise, *id.* § 546(e)(1). The Act grants cable subscribers the right to sue operators for breach of privacy. *Id.* § 551(f). Cable operators can sue for theft of services. *Id.* § 553. Cable employees and job applicants have the

right to sue in cases of unlawful discrimination. *Id.* § 554. But nowhere in the Cable Act do entities like VAN receive the right to appeal from the decisions of local franchise authorities such as the VPUC regarding the conditions imposed at renewal.

The statutory restriction of who may appeal was one reason that the Connecticut Supreme Court held that no party other than a "cable operator" may participate in an appeal of the decision of a franchising authority. *See Cox Cable Advisory Council v. Dep't of Pub. Util. Control*, 788 A.2d 29, 37–38 (Conn. 2002) ("Because these provisions expressly identify only the incumbent cable operator as the party able to obtain judicial review of a decision of a franchising authority . . . no other party may appeal such a decision."). VAN does not dispute that *Cox* so held, but asserts that even if *Cox* is correct on this point, Comcast cannot rely on § 546(e)'s limitation to appeals by "cable operators" while simultaneously bringing challenges that go beyond § 546(e). (Doc. 33 at 9.) According to VAN, Comcast has brought challenges that go beyond § 546(e) by challenging state statutory and constitutional provisions. (*Id.*) VAN also asserts that even if § 546(e) specifies who may "bring" an action, "it is not determinative of who may *participate* in an action." (*Id.* at 10.)

It is widely accepted that "[t]he words claim or defense [in permissive intervention] are not to be read in a technical sense." *Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011) (alterations in original) (quoting *Dow Jones & Co. v. U.S. Dep't of Justice*, 161 F.R.D. 247, 254 (S.D.N.Y. 1995)); *see also Standard Fire Ins. Co. v. Donnelly*, No. 1:08-CV-258, 2009 WL 1349948, at *4 (D. Vt. May 12, 2009) (same); *Commack Self-Service Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 106 (S.D.N.Y. 1996) (same). It has proven challenging to express a more liberal definition of these terms.

9

The case law is not uniform on this issue. In *Diamond v. Charles*, 476 U.S. 54 (1986), a three-justice concurrence expressed a more restrictive interpretation of Rule 24(b)(2). The case concerned the standing problem presented when the State of Illinois chose not to defend certain provisions of a statute restricting abortion after the case reached the Supreme Court. An Illinois physician, opposed to abortion, sought to intervene and defend the state statute himself. All justices agreed that he lacked Article III standing. The three concurring justices concluded as an additional basis for dismissal of the appeal that the doctor's intervention was improper because he lacked the "claim or defense" required by Rule 24(b).[4] According to the concurrence, "[t]he words 'claim or defense' manifestly refer to the kinds of claims of defenses that can be raised in courts of law as part of an actual or impending law suit." *Id.* at 76 (O'Connor, J., concurring).

As a case that defines when a person does *not* have a claim or defense, the *Diamond* concurrence casts little light on the circumstances, which do add up to a sufficient interest for purposes of intervention. The concurrence follows *SEC v. United States Realty & Improvement Co.*, 310 U.S. at 459, in distinguishing between direct personal or pecuniary issues and the more diffuse interest which could support permissive intervention. *Diamond*, 476 U.S. at 77 (O'Connor, J., concurring). This court respects the work of the concurring justices but does not find a basis in *Diamond*—which was an extraordinary case in many respects—for the exclusion of VAN from a case that concerns the conditions under which its members will operate following renewal of the Comcast franchise.

Comcast's argument rests on an overly restrictive definition of Rule 24's "claim or defense" language. "The 'claim or defense' contemplated by the rule is best understood as a

---

[4] Because the trial court did not distinguish between intervention as of right and permissive intervention, the decision also contains a discussion of Rule 24(a), which is not relevant to the present case.

10

reference to an Article III case or controversy, which exists only if the dispute meets constitutional justiciability requirements, including standing." 6-24 *Moore's Federal Practice – Civil* § 24.03[2][d] (3d ed. 2017); *see also Hughes v. Abell*, No. 09-220 (JDB), 2014 WL 12787807, at *4 (D.D.C. Feb. 10, 2014) (noting the concurrence in *Diamond* regarding the meaning of "claim or defense" under Rule 24 was referring to the presence of subject-matter jurisdiction).[5] Comcast's argument about who may seek judicial review under 47 U.S.C. § 546(e) has nothing to do with the *constitutional* requirements for justiciability.

Turning to the facts of this case in particular, the court concludes that VAN's party status in the VPUC proceeding supplies a sufficient basis for finding that it continues to have a legally-recognized "claim" in the present case. In the state administrative proceeding, the VPUC— applying its Rule of Practice and Procedure 2.209(B) governing permissive intervention— determined that VAN met criteria to intervene. Those criteria included demonstration of "a substantial interest which may be affected by the outcome of the proceeding." 18-1 Vt. Code R. § 2.209(B). That standard is a modification of Fed. R. Civ. P. 24(b) and does not apply in this court. But VAN's status before the VPUC proves something else, which is that in another legal proceeding concerning the same subject matter the tribunal recognized VAN's substantial interest. As the drafters of Federal Rule of Civil Procedure 24(b) might put it, VAN had a recognized "claim" or position in the VPUC case.

VAN is different from a party seeking to intervene who did not take part in the proceedings below. Such a party—which might have an equally keen interest in the outcome—

---

[5] An intervenor must have standing in order "to continue a suit in the absence of the party on whose side intervention was permitted." *Diamond*, 476 U.S. at 68. Here, VPUC is not absent so that requirement from *Diamond* is not implicated. In such circumstances, whether Article III standing is required for permissive intervention is an open question in some circuits. *See In re Endangered Species Act Section 4 Deadline Litig.*, 704 F.3d 972, 980 (D.C. Cir. 2013). The court need not resolve that question here.

never established that it had a substantial interest in the prior case. VAN did make that showing and was successful in persuading the VPUC that it had a substantial interest in the outcome of the case. VAN is in the position of many permissive intervenors who seek to protect their position in related cases even though they lack a direct interest in the case at hand. For many intervenors, the relationship of their case to the case before the court considering their motion is horizontal. They may have similar claims or defenses in other cases at the same stage of the legal process.

In this case, the relationship of this case to the one in which VAN was found to have a "substantial interest" is vertical. That does not mean that VAN does not have a "claim" in the VPUC case. The vertical relationship of the two cases underscores the significance of VAN's substantial interest in the VPUC case. VAN will be effectively bound by the results of this judicial review proceeding as much as Comcast. The resolution of this case is likely to affect VAN's activities, and there will be no second proceeding at which VAN can appear to advocate for its interests. Once VAN's prior "claim" is identified, the case for permissive intervention is strong.

## VI.     Independent Basis for Jurisdiction

Comcast argues that permissive intervention requires an independent basis for jurisdiction, and that VAN cannot establish such an independent basis because the Cable Act authorizes only cable operators to seek judicial review of cable franchise renewals. (Doc. 30 at 12–13.) Comcast cites *Cook v. Pan American World Airways, Inc.* for the proposition that "[a]s a general rule, an applicant for permissive intervention must establish an independent ground of jurisdiction." 636 F. Supp. 693, 699 (S.D.N.Y. 1986). VAN maintains that *Cook* is distinguishable and that "if a court has jurisdiction of the principal suit, there is no strict need to

12

show an independent basis of federal jurisdiction under Rule 24(b)(2)." (Doc. 33 at 8.) For the reasons below, the court concludes that the general rule mentioned in *Cook* is not a bar to VAN's intervention in this case.

The plaintiffs in *Cook* were pilots formerly employed by Pan American World Airways, Inc. who sued their unions and the airline for alleged violations of the Age Discrimination in Employment Act of 1967 (ADEA), arising out of a seniority system put in place when the airline merged with National Airlines, Inc. *Cook*, 636 F. Supp. at 694. They invoked the court's jurisdiction under 28 U.S.C. § 1343 (civil rights) and the doctrine of pendent jurisdiction. *Id.* at 699. A group of former National Airlines pilots sought to intervene as party defendants, arguing that if the plaintiffs prevailed, the former National Airlines pilots would be harmed because they would be relegated to relatively lower positions of seniority. *Id.* at 694. The court held that the would-be intervenors had failed to establish an independent ground of jurisdiction because they were not raising a claim or defense under ADEA or any other statute, and had not asserted any other ground for jurisdiction. *Id.* The court concluded that it could not exercise its discretion to grant permissive intervention. *Id.*

The reason for the general requirement of an independent basis for jurisdiction is to address the difficulty presented in situations where a would-be intervenor seeks to present a claim or defense but where "there would be no basis for federal jurisdiction if the intervenor were suing or being sued alone." 7C Charles Alan Wright et al., *Federal Practice & Procedure* § 1917 (3d ed. 2017). That difficulty arises most frequently in diversity jurisdiction cases, but also arose in some non-diversity cases prior to the 1990 enactment of 28 U.S.C. § 1367 providing for supplemental jurisdiction. *See id.*

*Cook* was not a diversity case, but to the extent that the difficulty was implicated there, it is not here. *Cook* was decided in 1986—before the enactment of the supplemental jurisdiction statute. With the enactment of § 1367, jurisdiction is allowed in federal-question cases provided that the intervenor's claims "form part of the same case or controversy." 28 U.S.C. § 1367(a). For the reasons discussed above, VAN's claims meet that test.

## Conclusion

The Motion to Intervene (Doc. 25) is GRANTED.

Dated at Rutland, in the District of Vermont, this 8th day of February, 2018.

Geoffrey W. Crawford, Chief Judge
United States District Court