IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| COMCAST OF CONNECTICUT/ GEORGIA/MASSACHUSETTS/NEW HAMPSHIRE/NEW YORK/NORTH CAROLINA/VIRGINIA/VERMONT, LLC, D/B/A COMCAST<br><br>*Plaintiffs,*<br><br>v.<br><br>VERMONT PUBLIC UTILITY COMMISSION, AND SARAH HOFMANN and ANTHONY ROISMAN, in their official capacities as members of the VERMONT PUBLIC UTILITY COMMISSION<br><br>*Defendants.* | Civil No. 5:17-cv-161 |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION
TO MOTIONS *IN LIMINE* OF DEFENDANTS AND
INTERVENOR VERMONT ACCESS NETWORK**

The Motions *in Limine* are based on the well-established principle that review of an agency decision is based upon the administrative record.[1]  Thus, when a party participates fully in an agency proceeding, and then appeals the final decision of that agency, as Comcast has done here, it cannot introduce or rely upon evidence not contained in the administrative record.

As identified in the parties' Stipulated Discovery Schedule/Order (ECF Doc. 60) ("Stipulated Discovery Order") ¶ 2, Comcast seeks to introduce non-record evidence regarding:

- compliance with the interactive programming guide ("IPG") condition of the renewed Certificate of Public Good ("CPG") ("Topic (c)"); and

- annual Comcast construction budgets relied upon by the Vermont Public Service Department in recommending, and the VPUC in imposing, the 550-mile line extension condition ("Topic (d)").

Comcast does not claim it was denied an opportunity to introduce evidence relating to Topics (c) and (d) in the renewal proceeding before the VPUC, or that these issues were not raised in the proceeding below.  Comcast *did* introduce evidence on these topics below; it just wants to introduce more evidence now.  Permitting Comcast to introduce new, non-record evidence on judicial review is contrary not only to the franchise renewal procedures Congress established in the Cable Act, but also the general role of courts in reviewing agency actions.

Comcast concedes that some of its claims "are essentially administrative review claims for this Court to evaluate based on the applicable statutory criteria and the administrative record."  Comcast's Opposition (ECF Doc. 72) at 1.  Comcast then argues that its Cable Act procedural claim and non-Cable Act claims entitle it to introduce new evidence on topics that were addressed in the administrative proceeding below.  Yet, in explaining its alleged need to

---

[1] This Court has the full administrative record both in electronic and paper formats.  The paper record fills multiple bankers' boxes.  All of the parties to this proceeding have an electronic copy of the administrative record, and no party has raised any claim that calls into question the completeness or accuracy of the administrative record.

introduce non-record evidence, Comcast lists issues that are relevant only to its substantive claims that the VPUC violated the Cable Act's statutory factors for franchise renewals (Count II), review of which is, as Comcast concedes, limited to the administrative record.

Comcast fares no better in its reliance on the generic standard of review of motions for summary judgment from *Cablevision Sys. Corp. v. Town of E. Hampton*, 862 F. Supp. 875 (E.D.N.Y. 1994), *aff'd*, 57 F.3d 1062 (2nd Cir. 1995). In fact, in that case the parties specifically agreed *not* to submit additional materials to the district court on summary judgment, except for "certain materials *that had been submitted to the [franchising authority]* concerning modification and revocation [of the franchise.]" *Id.* at 879 (emphasis added). That is the opposite of the situation here, where Comcast seeks to introduce evidence that it did not submit to the franchising authority. Because Comcast had the opportunity to submit, and did in fact submit, evidence to the VPUC on Topics (c) and (d), it would not be prejudiced by being prohibited from introducing new, non-record evidence on those matters. Allowing Comcast to introduce new evidence, on the other hand, would allow Comcast to argue that the VPUC erred based on evidence Comcast could have provided, but chose not to provide, in the proceeding below.

## I.  DISCOVERY TOPIC (D) AND THE LINE EXTENSION CONDITION

Comcast states that it intends to introduce non-record evidence on construction budgets to support its claims that the 550-mile line extension condition violates (1) Vermont and federal limitations on build-out requirements (Count V), and (2) the Common Benefits Clause of the Vermont Constitution (Count IX). The Opposition, however, focuses on Defendants' regulatory authority under 47 U.S.C. § 541(a)(4)(A), 30 V.S.A. § 517(e), and the Common Benefits Clause of the Vermont Constitution—arguments that have no bearing on the Motions *in Limine*.[2]

---

[2] Defendants will respond to Comcast's merits arguments in full on summary judgment. Comcast argues, for instance, that "the Cable Act and Vermont law prohibit" universal service build-out requirements. Opposition (ECF

Comcast purports to connect these purely legal issues to non-record evidence about its construction budgets by arguing that this evidence will show that the 550-mile line extension requirement is not reasonably related to customer demand.  Opposition (ECF Doc. 72) at 14-15. But the issue of the "demand for cable television service" in Vermont, *id.*, is precisely the same issue that Congress tasked franchising authorities with under the formal renewal procedures of the Cable Act: "identifying the future cable-related community needs and interests."  47 U.S.C. § 546.  Congress did not intend for courts to act as a "super" franchising authority and conduct a new hearing and develop new evidence on community cable-related needs and interests and the costs of meeting those needs and interests.

Comcast's effort to introduce new evidence also runs afoul of the express congressional mandate that the public be afforded the ability to participate in identifying community needs and interests.  47 U.S.C. § 546(a)(1).  Allowing a cable operator to reopen the record on judicial review, rather than making its case and responding to other stakeholders in the administrative renewal proceeding, would undermine the purpose of the renewal procedures Congress enacted. This case arises out of a cable franchise renewal proceeding conducted under the formal renewal procedures provided for in the Cable Act.  *See* Am. Compl. (ECF Doc. 29) ¶ 43.  This process provides that, if requested by a cable operator, a franchising authority shall "commence a proceeding *which affords the public in the franchise area appropriate notice and participation for the purpose of (A) identifying the future cable-related community needs and interests*, and (B) reviewing the performance of the cable operator under the franchise during the then current

---

Doc. 72) at 12.  In addition to being unrelated to the evidence sought in Topic (d), this argument is wrong.  As the Federal Communications Commission ("FCC") made clear, discussion of build-out requirements in FCC's *First 621 Order* cited by Comcast applies only to "competitive entrants"—not incumbents like Comcast.  Report and Order and Further Notice of Proposed Rulemaking, 22 FCC Rcd. 5101, ¶¶ 83-85 (2007) ("*First 621 Order*").  Comcast also overlooks the *Second 621 Order*, Second Report and Order, 22 FCC Rcd. 19633, ¶ 9 (2007), where the FCC made clear its discussion of build-out requirements in the *First 621 Order* was "not applicable to incumbents" like Comcast, and that the *First 621 Order*'s buildout discussion was also *not* based on 47 U.S.C. § 541(a)(4)(A).

franchise term." 47 U.S.C. § 546(a)(1) (emphasis added).  After this proceeding, the cable

operator may submit a proposal for franchise renewal, 47 U.S.C. § 546(b), which then requires

that franchising authority issue "prompt public notice of such proposal."  47 U.S.C. § 546(c)(1).

The franchising authority then either (1) renews the franchise, or (2) issues a preliminary

assessment that the franchise should not be renewed, in which case it shall "commence an

administrative proceeding, after providing prompt public notice of such proceeding" to consider

the four statutory factors listed in Section 546(c)(1)(A)-(D).  47 U.S.C. § 546(c)(1).[3]  One of the

factors the franchising authority is expressly instructed by Congress to consider is what is

reasonable to meet these needs and interests, in light of costs.  *See* 47 U.S.C. § 546(c)(1)(D).

Thus, the purpose of the Cable Act's renewal process is to allow the cable operator, other

stakeholders, and the public an opportunity to present comments, arguments, and evidence to the

franchising authority regarding future cable-related community needs and interests, as well as

what it would cost a cable operator to meet those needs.  Comcast had the opportunity to, and

did, participate in the proceeding below and submit evidence to the VPUC.

Comcast's construction budgets were squarely raised in the proceeding below.  In

discovery Topic (d), Comcast seeks to rebut on judicial review evidence introduced by the

Vermont Department of Public Service in the administrative hearing below about Comcast's

construction budgets.  Information from Comcast's annual reports regarding construction

budgets was submitted and addressed as part of the prefiled rebuttal testimony of Vermont

Department of Public Service witness Corey R. Chase.  *See* Am. Compl., Ex. 2 (ECF Doc. 29-2)

at 82 (¶¶ 191, 193).  That was well in advance of the hearing that occurred below.  Comcast had

the opportunity to cross-examine witness Chase at the technical hearing, but it chose not to.

---

[3] As discussed in more detail below, Comcast expressly agreed to combine the normal two-stage process into one proceeding before the VPUC.  *See* Am. Compl., Ex. 2 (ECF Doc. 29-2) at 13.

Transcript of 7/18/2016 Technical Hearing at 95:3, Certified Record of Proceedings (ECF Doc. 65).  Even after the Commissioners questioned witness Chase about the construction budgets and the basis for the recommendation of a 550-mile line extension requirement, Comcast did not question witness Chase or seek to introduce any additional evidence about these construction budgets.  *Id.* at 104:18-105:8, 109:10-11.  And when Comcast moved to alter or amend the VPUC's Renewal Order, it did not seek to rebut the Vermont Department of Public Service's and the VPUC's interpretation of the construction budgets; instead, it argued that the VPUC was effectively penalizing Comcast by requiring it to continue its "strong (and costly) historic performance."  Motion to Alter or Amend Judgment & Memorandum of Law in Support of Motion at 29, Certified Record of Proceedings (ECF Doc. 65).  Comcast now wants a second bite at the apple so that it can change course and introduce new, non-record evidence to argue that its construction budgets show *weak* demand for cable service—something it could have done but chose not to do in the VPUC hearing below.

Comcast should not be permitted to argue that the VPUC's renewal decision was in error because it did not take into account evidence that Comcast could have—but did not—introduce in the franchise renewal proceeding below.  If Comcast wanted that evidence to be part of the record in this Court's review of the administrative proceeding below, it was incumbent upon Comcast to introduce that evidence below.  The Court should prohibit Comcast from introducing new, non-record evidence now on Topic (d).

Finally, Topic (d) evidence would not establish any element of Comcast's preemption or Common Benefits Clause claims.  Preemption "is basically [a question] of congressional intent.  Did Congress, in enacting the Federal Statute, intend to exercise its constitutionally delegated authority to set aside the laws of a State?"  *Barnett Bank, N.A. v. Nelson*, 517 U.S. 25, 30 (1996).

5

And while the Common Benefits Clause requires that actions bear a reasonable and just relation to a governmental purpose, non-record evidence of Comcast's construction budgets is irrelevant to this question.  The VPUC's Renewal Order expressly states that the information in Comcast's construction budgets is *not* the basis for the 550-mile line extension condition; it merely shows the "financial viability" of this condition.  Am. Compl., Ex. 2 (ECF Doc. 29-2) at 89.

## II.    DISCOVERY TOPIC (C) AND THE IPG CONDITION

### A.    *Comcast's claim of a violation of the Cable Act's procedural requirements provides no basis for introducing non-record evidence.*

Comcast states that its claim under Section 546(e)(2)(A) is based on the VPUC's alleged violation of Section 546(d), which provides that a franchising authority "may not base a denial of renewal on a failure to substantially comply with the material terms of the franchise under subsection (c)(1)(A) . . . unless the franchising authority has provided the operator with notice and the opportunity to cure."  47 U.S.C. § 546(d).  Comcast's opposition conflates this *procedural* requirement for notice and opportunity to cure, with a franchising authority's *substantive* determination under Section 546(c)(1)(A) as to whether a cable operator has substantially complied with the material terms of the existing franchise.

In its Opposition, Comcast lists six points that it intends to show using non-record evidence regarding Topic (c).  But none of these points address its claim that Defendants violated the Cable Act's procedural requirements.  Instead, Comcast's points are about (1) whether it complied with the condition of its prior CPG, and (2) the technical and financial implications of the IPG condition.  But these are substantive issues that fall under Comcast's claim that the VPUC violated the Cable Act's statutory factors for franchise renewals (Count II)—review of which is, as Comcast concedes, limited to the administrative record.

The first set of points—about whether Comcast complied with the terms of its prior

franchise—pertains to whether Defendants erred in determining whether "the cable operator has

substantially complied with the material terms of the existing franchise and with applicable law."

47 U.S.C. § 546(c)(1)(A).  The Cable Act specifies that if a cable operator challenges a

franchising authority's adverse finding with respect to one of the factors listed in Section

546(c)(1)—including Section 546(c)(1)(A)—it must demonstrate that the finding "is not

supported by a preponderance of the evidence, *based on the record of the proceeding conducted*

*under subsection (c)*."[4]  47 U.S.C. § 546(e)(2)(B).  The second set of points Comcast seeks to

show using non-record evidence is also unrelated to its procedural claim.  Although the VPUC

must "tak[e] into account the cost of meeting [future cable-related community] needs and

interests," this requirement is also one of the four factors listed in Section 546(c)(1), and thus

must be reviewed based on the record below.  47 U.S.C. § 546(c)(1)(D).

The Court should reject Comcast's attempt to squeeze Topic (c)'s extra-record,

substantive Section 546(c)(1)(D)-related evidence into its Section 546(d) procedural claim.

Comcast seeks to introduce non-record evidence for Count I for the sole purpose of

"establish[ing] that this [procedural] violation was not 'harmless error,' as required under

§ 546(e)(2)(A) [by] show[ing] that it was materially prejudiced by the VPUC's failure to provide

notice."  Opposition (ECF Doc. 72) at 8.  But there is no merit to Comcast's claim that it is

prejudiced by an alleged lack of notice.[5]  According to Comcast, "the VPUC never suggested—

much less provided notice of—alleged non-compliance until *after* the renewal hearing, evidence,

---

[4] In addition, evidence purporting to show Comcast's compliance with the electronic programming guide ("EPG") condition of the prior CPG is beyond the scope of what is defined as Topic (c) in the Stipulated Discovery Order (ECF Doc. 60) ¶ 2.  Topic (c) is limited to evidence about "[t]he nature, costs, and timeline of changes to Comcast's systems and operations *to comply with Condition 22(3) in the Docket 8301 Renewal CPG*."  *Id.* (emphasis added).

[5] In any event, any violation of Section 546(d)'s procedural requirements regarding decisions based on Section 546(c)(1)(A) is harmless, because the VPUC's decision can be independently supported by Section 546(c)(1)(D). *See* Am. Compl., Ex. 2 (ECF Doc. 29-2) at 54-56.

and briefing were all *completed*."  Opposition (ECF Doc. 72) at 7 (emphasis in original).  This mischaracterizes the proceedings below in at least three ways.

First, Comcast was on notice—long before the evidentiary record closed—that there was alleged non-compliance with its current license.  Multiple witnesses filed *prefiled* testimony explicitly alleging non-compliance.  *See, e.g.*, Mobley Jan. 26, 2016 pf. at 13 ("[T]he Company *is noncompliant* with Conditions 11(5), 23, and 24 in its current Docket 7077 CPG." (emphasis added)); Davitian Jan. 26, 2016 pf. at 8, 17 (explaining how Comcast's system fails to provide the access required for "compliance . . . ordered by the Board"); Am. Compl., Ex. 2 (ECF Doc. 29-2) at 50 (citing prefiled testimony about the Vermont Access Network's position "that Comcast is not in compliance with condition 23 and other conditions of the Existing CPG").

Second, Comcast knew that this was at issue and had the opportunity to, and indeed *did*, submit evidence on this very topic in the proceeding below.  *See, e.g.*, Am. Compl., Ex. 2 (ECF Doc. 29-2) at 49-56 (VPUC Renewal Order discussing the nature and costs of the IPG condition, with citations to the record).  The issue of a programming guide was clearly raised in the administrative proceeding below.  *Id.* at 52-53 (discussing proposals by Comcast, the Vermont Department of Public Service, and the Vermont Access Network on this topic).  As the VPUC noted, the proceeding below included "some significant areas of disagreement between Comcast and the [Vermont Access Network] about interpretations of, and compliance with, existing conditions related to [public, educational, and governmental] access."  *Id.* at 15.  In defending against these claims, Comcast introduced evidence specifically addressing what it did to allegedly comply with this condition of its CPG.  *Id.* at 50-52 (citing pages 39-41 of rebuttal testimony offered by Comcast's witness, Daniel M. Glanville, regarding what Comcast currently provides and how much it would cost to provide more).  Comcast cannot now argue that new,

non-record evidence on this same topic is necessary to show that it was materially prejudiced in the proceeding below.

Third, in claiming it did not receive adequate notice, Comcast fails to mention that any alleged failure of notice is of Comcast's own making.  Comcast could have had a bifurcated proceeding that provided more notice, but instead explicitly agreed to a schedule that combined the ordinary two-step process of Section 546 into a single proceeding, as the VPUC explained:

> Comcast and the other parties have always contemplated that there would be one administrative proceeding related to the renewal of the CPG, and all the parties' proposed schedules have been consistent with this objective.  As a result, the ascertainment and proposal review processes have essentially been combined in this proceeding.

*Id.* at 13.  Thus, to the extent that Comcast claims it did not receive the notice that it would ordinarily receive in the first stage of a bifurcated proceeding, that claim is meritless because Comcast explicitly agreed to the very process about which it now complains.

In short, the applicable statutes and case law correctly hold that further evidence should be allowed only when the administrative processes below did not provide an opportunity to present that evidence.  Comcast's position, by contrast, rests on the premise that even when there is a full opportunity to make a record before an administrative agency with adjudicatory powers, a cable company can burden a federal court with the need to hold another evidentiary hearing.  This is incorrect.  Comcast's view would deprive the state agency of an opportunity to address a party's concerns before deciding the case and would impose additional and unnecessary work on federal courts.

**B.    *Comcast's non-Cable Act claims likewise provide no basis for introducing non-record evidence.***

Comcast's arguments for why it should be permitted to introduce non-record evidence to support its other claims are equally misplaced.  Comcast alleges that the VPUC violated

procedural due process in imposing the IPG condition (Count VII).  Opposition (ECF Doc. 72) at 9-10.  Yet the non-record evidence Comcast seeks to present on Topic (c) does not relate to that claim, but instead seeks to "establish *the extent of the costs and other harms* resulting from" the alleged due process violation.  *Id.* at 10 (emphasis added).  Neither of the cases cited by Comcast on this point involved evidence of the extent of harm, and those cases are therefore inapposite.

In addition, Comcast does not, and cannot, allege that the Cable Act's renewal procedures violate procedural due process.  Thus, the only question is whether the VPUC complied with the procedures set forth in the Cable Act (as modified here with Comcast's agreement), which does not require new, extra-record evidence to resolve.  Topic (c) also has no connection to the legal questions of whether those costs are a "civil penalty" under Vermont law or a "franchise fee" under the Cable Act.[6]  The Court should not allow Comcast to circumvent the Cable Act's requirement that review of substantive decisions regarding cable franchise renewals be limited to the administrative record.

## III.    CONCLUSION

Defendants respectfully request that the Court grant their Motion *in Limine*.

---

[6] Comcast does not argue that it needs new evidence to show costs exceed $20,000.  That is undisputed.  *See* Am. Compl., Ex. 2 (ECF Doc. 29-2) at 54-55 (IPG condition is appropriate "even assuming total costs of $4.0 million").

DATED at Montpelier, Vermont this 4th day of December 2018.

STATE OF VERMONT

THOMAS J. DONOVAN, JR.
ATTORNEY GENERAL

By:    */s/ Eleanor Spottswood*
        Jon T. Alexander
        Eleanor L.P. Spottswood
        Assistant Attorneys General
        Office of the Attorney General
        109 State Street
        Montpelier, VT  05609-1001
        (802) 828-3178
        eleanor.spottswood@vermont.gov

        James N. Horwood (admitted *Pro Hoc Vice*)
        Tillman L. Lay (admitted *Pro Hoc Vice*)
        Jeffrey M. Bayne (admitted *Pro Hoc Vice*)
        Spiegel & McDiarmid LLP
        1875 Eye Street, NW
        Suite 700
        Washington, DC  20006
        (202) 879-4000

        Counsel for Defendants

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2018, I electronically filed Defendants' Reply to

Plaintiffs' Opposition to Motions *in Limine* filed by Defendants and Intervenor Vermont Access

Network with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to all registered participants.

DATED at Montpelier, Vermont this 4th day of December 2018.

<div style="margin-left: 40%">

STATE OF VERMONT

THOMAS J. DONOVAN, JR.
ATTORNEY GENERAL

By:     */s/ Eleanor Spottswood*
        Jon T. Alexander
        Eleanor L.P. Spottswood
        Assistant Attorneys General
        Office of the Attorney General
        109 State Street
        Montpelier, VT  05609-1001
        (802) 828-3178
        eleanor.spottswood@vermont.gov

</div>