UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 FEB 20  PM 2:29

CLERK

BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| COMCAST OF CONNECTICUT/<br>GEORGIA/MASSACHUSETTS/NEW<br>HAMPSHIRE/NEW YORK/NORTH<br>CAROLINA/VIRGINIA/VERMONT, LLC<br>d/b/a COMCAST,<br><br>    Plaintiff,<br><br>    v.<br><br>THE VERMONT PUBLIC UTILITY<br>COMMISSION, and SARAH HOFMANN<br>and ANTHONY ROISMAN,[1] in their<br>official capacities as members of THE<br>VERMONT PUBLIC UTILITY<br>COMMISSION,<br><br>    Defendants,<br><br>    and<br><br>VERMONT ACCESS NETWORK, INC.,<br><br>    Intervenor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 5:17-cv-161 |

**ORDER ON MOTION IN LIMINE TO EXCLUDE NON-RECORD EVIDENCE AND
MOTION REGARDING ADMISSIBILITY AND USE OF NON-RECORD EVIDENCE
(Docs. 66, 67)**

Plaintiff Comcast of Connecticut/Georgia/Massachusetts/New Hampshire/New

York/North Carolina/Virginia/Vermont, LLC d/b/a Comcast ("Comcast") has filed this action

seeking judicial review of a recent order of the defendant Vermont Public Utility Commission

---

[1] Anthony Roisman succeeded James Volz as Chairman of the Public Utility Commission
in June 2017 and is substituted as a Defendant in his official capacity under Fed. R. Civ. P.
25(d).

("VPUC") or its predecessor the Vermont Public Service Board.[2] This order renews two cable franchises held by Comcast. Comcast objects to two of the conditions in the order and the associated renewed certificate of public good.    The court previously granted the motion to intervene filed by the Vermont Access Network, Inc. ("VAN").  (Doc. 37.)

Comcast is Vermont's largest provider of cable services.  Prior to January 2017, it operated under the authority of two certificates of public good (CPGs) issued by the VPUC.  In 2005, the VPUC issued a CPG in Docket 7077 authorizing Comcast to operate the cable system previously operated by Adelphia Communications Corporation.  This CPG had an expiration date of December 29, 2016.   In 2008, the VPUC issued a second CPG in Docket 7379 authorizing Comcast to operate the cable system previously operated by North Country Cablevision, Inc.  This CPG was scheduled to expire in 2019.

The CPG issued in Docket 7077 covers the majority of Comcast's cable network.  The CPG issued in Docket 7379 covers eight more towns in northwest Vermont.  The two CPGs contain substantially the same conditions.  (Renewal Order ("RO"), Doc. 29-2 at 24 n.36.)

In 2015, Comcast filed requests with the VPUC for renewal of both franchises in a consolidated renewal proceeding.  The VPUC conducted a franchise renewal proceeding which encompassed both CPGs in Docket 8301.  The VPUC issued its RO on January 13, 2017. (Doc. 29-2.)  The RO authorizes issuance of a renewed and consolidated CPG.  ("Renewed CPG," Doc. 29-1.)  As provided in the RO, the Renewed CPG includes two provisions that Comcast opposes.  These are:

---

[2] The court will refer to both the Vermont Public Utility Commission and the Vermont Public Service Board as the "VPUC."   The name changed effective July 1, 2017, but the function and procedures remained the same.  30 V.S.A. § 3.

**New Condition 22(3)—Interactive Program Guide**

This condition requires Comcast to list the programs offered by 45 local public, educational, and governmental ("PEG") access channels on Comcast's interactive program guide ("IPG"). The IPG is one of two formats through which Comcast has described the offerings available to viewers. The original format was the electronic program guide, or "EPG." The EPG is a separate cable channel which originally provided a scrolling list of all programs, including PEG programs. It was previously called the "TV Guide Channel" and was operated by a third-party which also published the popular TV Guide magazine.

Comcast also operates an Interactive Programming Guide ("IPG"). The IPG connects the viewer with the cable operator through the internet. An IPG offers more functionality than an EPG, including a search function. It provides controls for the viewer as well as a list of the programs on each channel. Over the past two decades, IPG technology has largely displaced EPG system as the guide to cable offerings.

The prior CPGs required Comcast to list the schedules of PEG channels on the EPG. The RO determined that prior to 2010, the EPG displayed the PEG channel programs to viewers. Comcast moved its programming information to the IPG in 2010. The EPG changed its content and no longer provides program listings. The IPG provides only the most general information about the content of the PEG channels such as "public, educational or governmental."

In its current configuration, Comcast's IPG does not display the offerings from each PEG station. Because PEG stations are local, they frequently share the same channel and run their own programs locally. One cable channel may carry different PEG programming in multiple communities. As currently designed, the IPG does not show different programming for each PEG station. In the view of the VPUC, Comcast has violated its obligation under the prior CPGs

3

to provide specific listings for PEG programming.  The RO requires a modification of the IPG so that viewers may see the offerings for their local PEG channel.  (Doc. 29-2 at 50–53.)

Comcast objects to the required modification of its IPG on several grounds.  These include:

- A claim of lack of notice and an opportunity to be heard concerning VPUC's intent to impose the condition as a penalty for alleged noncompliance with the prior CPGs;

- A claim that this feature is not desired by cable subscribers and is not justified by a cost benefit analysis;

- A claim that the condition must be considered a "franchise fee" which the Cable Act limits to a maximum of five percent of gross revenues.  Under the prior CPGs, Comcast already pays the maximum five percent franchise fee and these charges were carried over into the Renewed CPG; and

- A claim that the condition is unlawful because the RO and the Renewed CPG bar Comcast from passing the cost of modification to subscribers.  Instead, the RO describes the condition as a punitive response to violations of the EMG condition in previous CPGs to be borne by Comcast.

### New Conditions 13(7), 33 and 34—Mandatory Line Extensions

These conditions concern mandatory line extensions totaling 550 miles to communities not served by cable.  Comcast objects to these conditions on multiple grounds.  The court has previously dismissed Comcast's First Amendment claims.  (Doc. 56).  The remaining claims are:

- The conditions do not result from a consideration of community needs and benefits as compared to their costs and burdens as required by the Cable Act.

4

- Comcast did not receive notice and an opportunity to challenge the line extension conditions before they appeared in the RO.

- Singling out Comcast as solely responsible for the line extension violates the Common Benefits clause of the Vermont Constitution

The VPUC and VAN have both filed motions seeking to limit the evidentiary record that the court considers in evaluating Comcast's complaints to the evidence placed before the VPUC. (Docs. 66 and 67.)  Comcast seeks to introduce evidence relating to its claims of federal preemption and constitutional violations.  There are two topics on which it seeks to introduce evidence.  These are (1) the nature, cost, and timeline of changes required to comply with the IPG condition, and (2) the annual Comcast construction budgets relied upon by the VPUC in imposing the 550-mile line extension requirements.  (Doc. 72 at 3.)

## ANALYSIS

### I.      Statutory Background

Cable regulation is a shared function of state and federal law.  The federal Cable Act, 47 U.S.C. §§ 521–573, authorizes state and municipal regulatory bodies serving as "franchising authorities" to grant cable franchises to operators.  47 U.S.C. § 541(a)(1).  In Vermont, Chapter 13 of Title 30, Vermont Statutes Annotated—entitled "Cable Television Systems"—provides additional procedures and standards applicable to regulation of the cable industry by VPUC.  The Vermont statutes receive further interpretation through VPUC Rule 8.230 and 8.214, which provide additional criteria for use by the VPUC in evaluating and ruling on franchise applications.

Section 546 of Title 47 provides for the renewal of franchises at the request of the cable operator holding the franchise.  Section 546 establishes the procedures and timeline that apply to

a renewal proceeding and outlines the criteria that the franchising authority must apply in granting or withholding renewal. These include compliance with the existing franchise, the quality of customer service, and the cable operator's ability to provide services and meet future community needs and interests.[3] Section 546(c)(2) sets out procedural standards for the conduct of a renewal proceeding, including notice to the cable operator and an opportunity to present evidence and to question witnesses. The franchising authority is required to issue a written decision based upon the record of the proceeding stating its reasons to grant or deny the proposal.

A cable operator disappointed in the outcome of the administrative renewal proceeding may appeal the decision to state or federal court. 47 U.S.C. § 555(a). The Cable Act permits such an appeal on the basis of non-compliance by the franchising authority with the procedural requirements of § 546 or on the ground that "the evidence, based on the record of the proceeding conducted [before the franchising authority] did not support the findings on the four criteria for renewal by a preponderance of the evidence." *Id.* § 546(e)(2)(B). In other words, the court reviewing the administrative proceeding may grant relief on the basis of procedural error or

---

[3] Section 546(c)(1)(A)–(D) of Title 47 identifies the four substantive factors subject to judicial review:

    (A)   The cable operator has substantially complied with the material terms of the existing franchise and with applicable law;

    (B)   The quality of the operator's service, including signal quality, response to consumer complaints, and billing practices, but without regard to the mix or quality of cable services or other services provided over the system, has been reasonable in light of community needs;

    (C)   The operator has the financial, legal, and technical ability to provide the services, facilities, and equipment as set forth in the operator's proposal; and

    (D)   The operator's proposal is reasonable to meet the future cable-related community needs and interests, taking into account the cost of meeting such needs and interests.

because the substance of the administrative decision was not sufficiently supported by the evidence submitted to the franchising authority.

Section 546 also establishes the procedures that govern judicial review of the administrative decision.  Section 546(e)(2) limits the scope of the evidence to be considered by a reviewing court.  The statute places no restriction on the evidence that can be offered in support of a claim that the action of the franchising authority fails to comply with the procedural requirements of § 546.  In the case of a review of the franchising authority's findings concerning the four substantive factors listed at § 546(c)(1)(A)–(D), judicial review is confined to the record of the administrative renewal proceeding.  47 U.S.C. § 546(d)(2)(B).  A decision on the two pending motions in limine depends largely on whether Comcast's objections to the RO are considered procedural or substantive.

## II.     Scope of Evidence for "Procedural" and "Substantive" Claims

Courts analyzing the scope of evidence to be considered by a reviewing court under § 546(e)(2)(A) have been unanimous in following the plain language of the statute, which limits review of the four substantive criteria to an on-the-record review of the evidence introduced in the administrative proceeding before the franchising authority.  *See Union CATV, Inc. v. City of Sturgis, Ky.*, 107 F.3d 434, 440 (6th Cir. 1997) ("A court reviewing the denial of a cable operator's proposal for renewal must decide whether the operator has shown that the franchising authority's decision is not supported by a preponderance of the evidence introduced at the administrative proceeding."); *Rolla Cable Sys., Inc. v. City of Rolla,* 745 F. Supp. 574, 577 (E.D. Mo. 1990) ("Section 546(e)(2)(B) does not require this Court to conduct a de novo review. The subsection indicates that the review is 'based on the record of the proceeding conducted under subsection (c) of this section.'").

7

Courts have disagreed over the permissible scope of evidence of claims of procedural violations. As a practical matter, the area of disagreement is confined to whether the opportunity to offer additional, non-record evidence of procedural violations is conferred by statute or derived from due process principles. Two cases illustrate this narrow dispute.

In *Cablevision of the Midwest, Inc. v. City of Brunswick*, 117 F. Supp. 2d 658 (N.D. Ohio 2000), the trial court relied on the omission of language requiring an on-the-record review in § 546(e)(2)(A) as evidence of congressional intent to allow the court to consider evidence of alleged procedural violations which was not introduced at the original hearing. "[T]he canons of statutory interpretation, when applied to the plain text of the Act, compel the conclusion that Congress did not intend review under § 546(e)(2)(A) to be limited to the administrative record . . . ." *Id.* at 662.

The district court in *Rolla Cable Systems* concluded that the legislative history of the Cable Act indicates that "Congress intended to restrict the scope of review in Section 546(e)(2)(A) to matters considered in the record." 745 F. Supp. at 577. The court reasoned that a decision by Congress to abandon a prior draft of the Cable Act providing for *de novo* review of rulings by cable regulators was evidence of the legislators' desire to limit both procedural and substantive judicial review to the administrative record below. Instead, the court found authority for the admission of non-record evidence "in limited circumstances, where fundamental due process concerns are implicated." *Id.* at 577.

No court decision excludes non-record evidence of procedural violations altogether. There are practical reasons why a due process violation may not be documented in the administrative record. The absence of notice or the denial of an opportunity to be heard may not appear in the record at all. An agency, however well-intentioned, may not admit evidence of a

8

procedural shortcoming such as bias or conflict of interest. A party who is absent or whose presentation is curtailed may not have the opportunity of making a proffer or in some other way creating a record of denial of procedural rights. In these circumstances, admission of non-record evidence may be necessary to document the alleged procedural error.

The admission of non-record evidence on procedural issues is consistent with broader principles of administrative law favoring judicial review of agency action. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) ("The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws."); *see also McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991) (challenges to immigration agency procedures not barred by statute prohibiting judicial review of certain rulings). The case before this court does not concern the wholesale denial of judicial review. The issue of admissibility of non-record evidence, however, is a subset of this larger issue. The court is satisfied that it is appropriate to admit non-record evidence of alleged procedural violations since they may otherwise remain unexamined.

## III. Is Comcast's Proposed Evidence Relevant to a "Procedural" Issue?

The next question is whether the evidence proffered by Comcast of the cost and burden of the proposed modification of the IPG system and the construction budgets considered by the VPUC in imposing the 550-mile line extension condition is relevant to a procedural issue.

### A. IPG Condition

In its RO, the VPUC imposed a requirement that Comcast modify the IPG to enable display of PEG channel's programs to that channel's viewers. This is a new condition not previously imposed on Comcast. In the prior CPGs, public access listings were ordered to be displayed through the EPG channel. In the RO, the VPUC justifies this new condition based on

its finding that VPUC had a history of violating the EPG conditions included in the prior CPGs. (*See* Doc. 29-2 at 55.)

Comcast challenges the IPG condition on substantive grounds and accepts that its claim under § 546(c)(2)(B) that the condition is too cumbersome, expensive, or duplicates the existing EPG feature must be based on the administrative record. It also mounts a procedural challenge against the IPG condition. This challenge has two elements: that Comcast did not receive notice of VPUC's intent to find it in violation of the prior CPGs and that this error was not harmless error. Comcast agrees that whether it received notice is a matter that can be established on the record of the administrative proceeding. It is on the second element—harmless error—that it seeks to introduce evidence of the nature, costs, and timeline of changes required to meet Condition 22(3).

The court rejects the argument that it is necessary to introduce evidence about the cost and other aspects of the IPG condition in order to prove that the alleged lack of notice was not harmless error. The important issue is whether Comcast was unfairly blindsided by the finding that it had violated the EPG condition. That is an issue of notice that the parties agree can be decided on the record below. (Doc. 72 at 9; Doc. 73 at 7; Doc 74 at 1.) It is hard to see how the result could be otherwise. Either Comcast learned of the allegation that it had violated the prior CPG 8301 and had an opportunity to defend itself against the charge or the issue first arose when the RO issued. That issue of notice has nothing to do with the cost and utility of modifying the IPG to display PEG programming.

Neither party contends that the cost of compliance with Condition 22(3) is minor. The RO finds that the cost lies somewhere between three and four million dollars. (Doc. 29-2 at 56.) Comcast estimates the cost of the modifications at over four million dollars. These figures are

significant, and the issue of modifying the condition is of great importance to all three parties. The issue of harmless error is not reasonably in dispute and cannot serve as a basis for reopening the record concerning the merits of the IPG condition.[4]  The court will rule later on the question of lack of notice to Comcast.  If Comcast demonstrates that it was denied sufficient notice, the court will not reject the claim on grounds of harmless error.  Consistent with this position, the court will not permit Comcast to introduce non-record evidence about the IPG in order to demonstrate that the alleged procedural error was not harmless.

**B.**    **Conditions 13(7), 33 and 34—Mandatory Line Extensions**

The RO requires Comcast to build 550 miles of new cable line, extending service to areas not previously served.  There is no dispute that this issue was the subject of testimony and other evidence at the administrative hearing.  Comcast challenges these conditions under the substantive bases for judicial review under federal and state law, 47 U.S.C. § 546(e)(2)(B) and 30 V.S.A. §§ 504 and 506.  Comcast agrees that these substantive challenges are limited to the administrative record.  Comcast also challenges these conditions on the ground that they violate federal and state limits on cable build-out requirements, 47 U.S.C. § 541(a)(4)(A) and 30 V.S.A. § 517, and the Vermont Common Benefits Clause.  Comcast seeks to introduce additional non-record evidence concerning the cost and consumer demand for these line extensions.

---

[4] In footnote 5 of the VPUC reply brief, counsel suggest that any procedural violation affecting a finding under 47 U.S.C. § 546(c)(1)(A) that "the cable operator has substantially complied with the material terms of the existing franchise" is rendered harmless by the alternative ground that it was supported by § 546(c)(1)(D) that the operator's proposal is reasonable to meet future community needs.  (Doc. 73 at 8 n.5.)  The court rejects this argument. The RO was explicit in identifying past conduct by Comcast as a basis for imposing the IPG condition.  It is too late now to rewrite the RO as identifying some other reason for imposing the condition.

The VPUC responds that the Cable Act creates a single franchise renewal proceeding at which the parties must present all their evidence to the franchising authority about every aspect of the franchise renewal. Reopening the evidence when the court reviews the decision of the franchise authority weakens the intent of the Cable Act to place decision-making about cable franchises at the local level, subject to judicial review on the record developed below.

The court turns to the specific claims on which Comcast relies in seeking the admission of non-record evidence. Both state and federal law impose limits on the obligation of a cable operator to provide service to every household within its area. The federal legislation appears at 47 U.S.C. § 541(a)(4)(A): "In awarding a franchise, the franchising authority . . . shall allow the applicant's cable system a reasonable period of time to become capable of providing cable service to all households in the franchise area." The D.C. Circuit has interpreted this provision to require a franchise authority to impose only reasonable build-out requirements. *Americable Int'l, Inc. v. Dep't of Navy,* 129 F.3d 1271, 1274–75 (D.C. Cir. 1997). A cable system is not built in a day.

Vermont law provides scarcely more detail. Section 517(e) of Title 30 provides: "Notwithstanding any other provision of this section, the Commission may require the construction of cable television line extensions when a company receives a bona fide request for service from a reasonable number of verified customers or with reasonable contributions in aid of construction from customers." These two provisions contemplate the inclusion of line extension provisions in CPGs and require these extensions to be reasonable, both with respect to how quickly the line is extended and to how many customers constitute sufficient demand.

Returning to the issue of non-record testimony, the court does not agree with Comcast that the state and federal statutes create a cause of action for line extension issues which is

different from the judicial review provided by § 546. Line extensions form part of the franchise renewal proceeding. A cable operator is no less required to make its record before the VPUC on line extension conditions than on any other aspect of the franchise. The state and federal provisions require that the extensions be reasonable, but they do not create a separate process of judicial review with a record different from that applicable to the other terms and conditions of the CPG.

Turning to the Common Benefits claim, the court concludes that the claim that the VPUC has singled out Comcast for treatment not accorded to other cable operators is legal in nature. The budgeted cost of the line extensions and the level of interest among potential customers is likely to be irrelevant to the constitutional claim that Comcast is the victim of "government exercising its authority inequitably and without a rational basis or for the emolument of a particular group." *In re Town Highway No. 10*, 2012 VT 17, 191 Vt. 231, 45 A.3d 54 (recognizing a private remedy for violations of the Common Benefits Clause). But Comcast's causes of action which fall outside the Cable Act and related Vermont cable statutes are not governed by § 546. It is up to the parties to submit the affidavits and exhibits that relate to these claims and to brief their relevance. On these claims, the court is not in a position to rule in advance that a piece of evidence cannot be submitted. If the construction budgets are submitted in connection with the Common Benefits claim, the court will be careful about considering it for its offered purpose only and not with respect to the judicial review claims governed by section 546.

## IV.   Discovery

The remaining issue concerns the availability of discovery. The parties previously filed a stipulated discovery order which was signed by the court. (Doc. 64.) Subject to the resolution of

the two motions in limine, Comcast reserved the right to conduct discovery on the following

issues:

    a. Any prior notice from the VPUC to Comcast of non-compliance with the electronic programming guide condition in (i) the Docket 7077 CPG, Condition 23(3) and/or (b) the Docket 7379 CPG, Condition 24(3).

    b. Any prior notice from the VPUC to Comcast of non-compliance with its line extension policy or tariffs when operating under either the Docket 7077 or Docket 7379 CPGs and before imposition of Conditions 13(7) and 34 in the Docket 8301 Renewal CPG.

    c. The nature, costs, and timeline of changes to Comcast's systems and operations to comply with Condition 22(3) in the Docket 8301 Renewal CPG.

    d. The annual Comcast construction budgets relied upon by the Vermont Department of Public Service in recommending, and the VPUC in imposing, the 550 mile line-extension requirements in the Docket 8301 Renewal CPG.

(*Id.* ¶ 2.) The need for discovery has been reduced by the present order.

There is no need for discovery regarding provision of notice. The parties already agree that whether VPUC provided notice of its position that Comcast was in violation of the EPG condition can be determined from the record before the VPUC. The court has ruled out any need for this information on the issue of "harmless error." There is no need for discovery on topic (a).

Similarly, there is no need for discovery of notice issues on topic (b). Whether Comcast received notice of the line-extension issues can be determined on the record below. There is no claim that an order requiring the construction of an additional 550 miles of cable is so inconsequential as to amount to 'harmless error" if Comcast can demonstrate procedural error.

There is no need for discovery on the costs of implementing the modifications to the IPG. The parties agree that the cost lies between three and four million dollars. The "nature, costs, and timeline of changes" is also the type of information which the Cable Act and Title 30 of the Vermont Statutes anticipates will be presented to the VPUC. There is no need for discovery on this issue.

The remaining topics are the Comcast construction budgets relied upon the VPUC in ordering the line extension. The court has already excluded non-record evidence as it relates to issues arising under the Cable Act and Title 30. The facts concerning these issues must be developed before the VPUC. The court expressed willingness to consider such evidence in the separate constitutional claim arising under the Vermont Common Benefits Clause. Discovery is permitted on that issue.

## **Conclusion**

The court GRANTS the motions in limine (Docs. 66, 67) as they relate to the exclusion of non-record evidence from claims arising under the Cable Act. The motions are DENIED with respect to the claim of violation of the Common Benefits Clause of the Vermont Constitution. Limited discovery is permitted.

Dated at Rutland, in the District of Vermont, this 20th day of February, 2019.

Geoffrey W. Crawford, Chief Judge
United States District Court